[No. G038123. Fourth Dist., Div. Three. Apr. 10, 2008.]

TOBY L. BLOCK, Plaintiff and Respondent, v.
ORANGE COUNTY EMPLOYEES' RETIREMENT SYSTEM, Defendant
and Appellant.

1298

**COUNSEL**

Julie E. Wyne and David H. Lantzer for Defendant and Appellant.

Steefel, Levitt & Weiss, Ashley K. Dunning and Kelly L. Knudson for Board of Retirement of the Alameda County Employees' Retirement Association, Board of Retirement of the Contra Costa County Employees' Retirement Association, Board of Retirement of the Marin County Employees' Retirement Association, and Board of Retirement of the Ventura County Employees' Retirement Association as Amici Curiae on behalf of Defendant and Appellant.

Reed Smith, Harvey L. Leiderman and Jeffrey R. Rieger for Board of Retirement of the Fresno County Employees' Retirement Association, Board of Retirement of the Los Angeles County Employees' Retirement Association, Board of Retirement of the Sacramento County Employees' Retirement System, Board of Retirement of the San Joaquin County Employees' Retirement Association, and Board of Retirement of the Tulare County Employees' Retirement Association as Amici Curiae on behalf of Defendant and Appellant.

Lewis, Marenstein, Wicke & Sherwin and Thomas. J. Wicke for Plaintiff and Respondent.

## OPINION

### FYBEL, J.—

#### INTRODUCTION

This case turns on our interpretation of the term "disability allowance" as used in Government Code section 31838.5, part of the County Employees Retirement Law of 1937, Government Code section 31450 et seq. (CERL). (All further statutory references are to the Government Code unless noted.) The disputed portion of section 31838.5 states: "No provision of this chapter shall be construed to authorize any member, credited with service in more than one entity and who is eligible for a *disability allowance*, whether service connected or nonservice connected to receive *an amount* from one county that, when combined with *any amount* from other counties or the Public Employees' Retirement System, results in a *disability allowance* greater than *the amount* the member would have received had all the member's service been with only one entity." (Italics added.)

Based on the language of section 31838.5, the statutory scheme, well-settled principles of statutory interpretation, and legislative history, we hold the term "disability allowance" means all benefits a member receives from reciprocal systems or from the California Public Employees' Retirement System (CalPERS) for retiring concurrently due to disability, regardless whether those benefits are labeled disability retirement or service retirement. Accordingly, the decision of the Orange County Employees' Retirement System (OCERS) Board of Retirement was correct, and we reverse the judgment of the trial court.

#### FACTS

OCERS is a defined-benefit, public employee retirement trust that provides retirement, health, death, and disability benefits to retired employees of

Orange County and other public employers within the county. CERL governs the rights and obligations of OCERS and its members.

Toby L. Block was employed by the Buena Park Fire Department from January 1967 until October 1, 1994. His last assignment was as a fire captain. As an employee of the Buena Park Fire Department, Block was a member of CalPERS.

On October 1, 1994, the Buena Park Fire Department merged with the Orange County Fire Authority. Block worked as a fire captain with the Orange County Fire Authority from October 1, 1994, to March 1, 2001. As an employee of the Orange County Fire Authority, Block was a member of OCERS.

In December 2001, Block applied for a service-connected disability retirement from OCERS. Block concurrently applied for service retirement benefits from CalPERS. On July 15, 2002, OCERS Board of Retirement approved Block's application for service-connected disability retirement benefits with an effective date of May 20, 2002. CalPERS approved Block's application for regular service retirement benefits also with an effective date of May 20, 2002.

Because Block retired concurrently from OCERS and CalPERS, section 31835 permitted him to use his highest average salary under either retirement system to calculate his retirement benefits under both systems.[1] Block's final average monthly compensation, which he earned while a member of OCERS, was $7,021.15. From CalPERS, Block received as a retirement benefit 75.268 percent of his highest average monthly compensation (which CalPERS deemed to be $6,793.42), which amounted to $5,113 (0.75268 x $6,793.42). Block's service-connected disability retirement benefit from OCERS was equal to 50 percent of his final compensation, which would be $3,510 (0.5 x $7,021.15), subject to applicable limitations and caps. Combined, Block's CalPERS monthly benefit and OCERS monthly benefit would be $8,623, which is 122.8 percent of his final average monthly compensation of $7,021.15.

ADMINISTRATIVE PROCEEDINGS

Relying on section 31838.5, OCERS reduced Block's service-connected disability retirement benefits pro rata so that his total retirement benefit would

---

[1] A CalPERS information sheet on reciprocal benefits states: "The following benefits and requirements apply to CalPERS members who make a qualified move between reciprocal systems. [¶] . . . [¶] . . . CalPERS will compute your final compensation based on the highest rate of pay under any system, as long as you retire on the same date from all systems."

not be greater than what he would have received had his employment been with just one entity.[2] Block disputed the reduction and requested an administrative hearing. After a hearing, the administrative referee concluded OCERS was not authorized under section 31838.5 to reduce Block's retirement benefit and recommended his annual retirement benefits from OCERS be equal to 50 percent of his final compensation.

The OCERS Board of Retirement declined to adopt the referee's recommendation and opted to review the matter de novo based on the evidence presented to the referee. The board conducted its review and on August 29, 2005, issued a final decision concluding, "OCERS has appropriately applied the pro rata reduction to [Block]'s retirement benefit in accordance with Gov. Code § 31838.5."

The board found: "Gov. Code § 31838.5 was clearly intended by the California Legislature and the Governor who signed the legislation to 'eliminate the possibility that an employee receiving benefits under the County Employees' Retirement System of 1937 could be eligible for more than 100% of salary upon retirement because of successive coverage in more than one public retirement system.' . . . [¶] The concept of reciprocity is critical to this case. 'Essentially, reciprocity allows a member who has transferred to be treated as though he had always been in the same retirement system.' . . . Mr. Block was a reciprocal member of OCERS based upon his prior service with CalPERS. . . . The result of this reciprocity is that Mr. Block is treated as though he were a member of OCERS for his entire career in the fire service even though he actually moved between two fire service agencies and two pension systems. He changed the patches on his uniform sleeve, but his pension benefit remained in singularity. He is credited with one period of 35.543 years of career service resulting in a public pension benefit paid to Mr. Block with a check from each of the two pension systems that are tied together due to the concept of reciprocity. . . . This allowed Mr. Block to move between two pension systems 'without any loss of benefits.' . . . [¶] Gov. Code § 31838.5 applies to a member receiving a pension benefit from two or more systems when one of the systems has determined that the member is 'eligible for a disability allowance, whether service-connected or non-service connected.' Gov. Code § 31838.5 links the service-connected or non-service connected disability allowance from one system with the words 'any amount' of a pension benefit from the other system. OCERS correctly interpreted and applied Gov. Code § 31838.5 to this case. Any other interpretation is creative wordsmithing and leads to a result that treats two members of OCERS differently. . . . The minimum 50% level is financial protection for a worker

---

[2] The last paragraph of section 31838.5 states: "Each entity shall calculate its respective obligations based upon the member's service with that entity and each shall adjust its payment on a pro rata basis."

injured in the line of duty. It is not an additional allowance that Mr. Block feels he is entitled to. Regardless of what the referee thought in her opinion, the action by the Legislature in enacting and amending Gov. Code § 31838.5 was clearly intended to address a public policy issue where a member 'receives combined pension benefits in excess of his final compensation.' . . . [¶] The maximum amount of final compensation allowed to a member of OCERS is 100% per the applicable Government Code Sections. . . . Had Mr. Block been in one system for the 35.543 years of fire service, the maximum monthly benefit he could have received would have been $6,537.78."

Finally, the board found Block would receive about " '125% of pay as a combined retirement benefit' " if it ruled in his favor. The board concluded, "[t]his is an absurd result and defies common sense."

### PROCEEDINGS IN THE SUPERIOR COURT

Block challenged the board's decision by filing a petition for peremptory writ of mandate under Code of Civil Procedure section 1094.5. After briefing, the superior court heard the matter in October and November 2006. On November 27, 2006, the superior court entered a minute order granting the petition and concluding that section 31838.5, "according to the usual, ordinary import of the language used," did not authorize a reduction in Block's service-connected disability retirement benefits. The court reasoned: "Had the Legislature wanted this statute to guarantee that the total retirement benefit (disability, service, etc[.]) would not be more than what [Block] would have earned had he stayed with any given employer/entity, then [it] could have easily stated, for example, 'No retiree shall receive a sum that . . . results in a *total retirement benefit* greater than the amount the member would have received had all the member's service been with only one entity.' But the Legislature instead stated, '. . . No . . . member . . . shall . . . receive . . . an amount (that) results in a *disability allowance* greater than the amount the member would have received had all the member's service been with only one entity.' " (Second ellipsis added.)

The superior court stated that a ruling in Block's favor "reaches a counter intuitive and, one could argue, an absurd practical result, i.e.: that Captain Block receives a combined 125 % of his total employment compensation." The court believed, however, that result "is compelled by the fact that the California legislature has not passed . . . a statute that a person in [Block]'s position is NOT entitled to BOTH his full service pension AND his full disability pension."

OCERS timely appealed from the judgment in Block's favor entered on January 3, 2007.

## DISCUSSION

### I.

*The Issue: What Is the Meaning of the Term "Disability Allowance" as Used in Section 31838.5?*

The portion of section 31838.5 in dispute provides: "No provision of this chapter shall be construed to authorize any member, credited with service in more than one entity and who is eligible for a *disability allowance*, whether service connected or nonservice connected to receive *an amount* from one county that, when combined with *any amount* from other counties or the Public Employees' Retirement System, results in a *disability allowance* greater than *the amount* the member would have received had all the member's service been with only one entity." (Italics added.)

Both parties agree the words "*an amount*," as used in this case, refer to the amount of Block's service-connected disability benefit from OCERS, the words "*any amount*" refer to the amount of Block's retirement benefit from CalPERS, and the words "*the amount*" refer to the amount Block would receive for retiring due to service-connected disability if all his years of service had been with a single public entity with a retirement system subject to CERL. The issue is the meaning of the term "*disability allowance*."

Block argues, and the superior court concluded, the term "disability allowance" in section 31838.5 does not include his service retirement from CalPERS awarded concurrently with his service-connected disability from OCERS. Thus, Block argues, the amount he receives from OCERS in service-connected disability retirement, when combined with the service retirement he receives from CalPERS, would not produce a disability allowance greater than *the amount* he would have received if all of his service had been with one entity.

OCERS argues the term "disability allowance" in section 31838.5 must refer to all amounts, whether labeled disability retirement or service retirement, the member receives when the member retires due to disability. Block's disability retirement from OCERS, combined with his service retirement from CalPERS, equals over 122 percent of Block's final compensation—more than *the amount* he would have received had his service been with one entity. Thus, OCERS argues, section 31838.5 permits it to reduce Block's disability retirement allowance pro rata.

## II.

### Principles of Statutory Construction

■ We begin by laying out the applicable principles of statutory construction. "The goal of statutory construction is to ascertain and effectuate the intent of the Legislature. [Citation.] Ordinarily, the words of the statute provide the most reliable indication of legislative intent. [Citation.] When the statutory language is ambiguous, the court may examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes. [Citations.] ' "Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." ' [Citation.]" (*Pacific Gas & Electric Co. v. County of Stanislaus* (1997) 16 Cal.4th 1143, 1152 [69 Cal.Rptr.2d 329, 947 P.2d 291].)

■ Ambiguity or uncertainty in the meaning of pension legislation must be resolved in favor of the pensioner, but such interpretation must be consistent with the statute's language and purpose. (*Lear v. Board of Retirement* (2000) 79 Cal.App.4th 427, 434 [94 Cal.Rptr.2d 89].)

## III.

### CERL Reciprocity Provisions, Related CERL Provisions, and Section 31838.5's Legislative History

The words of section 31838.5 standing alone are neither clear nor unambiguous, and shed little light on the Legislature's intent. Indeed, section 31838.5, as part of a greater statutory scheme, makes sense only when construed in context as part of that scheme. Accordingly, in part III.A. we discuss the CERL reciprocity provisions, in part III.B. we discuss related CERL provisions, and in part III.C. we discuss section 31838.5's legislative history. In part IV., we analyze section 31838.5's language in light of this discussion to resolve the issue presented.

### A. CERL's Reciprocity Provisions

■ CERL's reciprocity provisions, article 15 of title 3, division 4, part 3, chapter 3 of the Government Code, provide for certain reciprocal retirement benefits when a person formerly employed by one reciprocal public entity retires from another reciprocal public entity. Section 31830 states: "The provisions of this article are intended to encourage career public service by granting reciprocal retirement benefits to members who are entitled to retirement rights or benefits from two or more retirement systems established

under this chapter or from a retirement system established under this chapter and the Public Employees' Retirement System, the State Teachers' Retirement System, or a retirement system of any other public agency of the state that has established reciprocity with the Public Employees' Retirement System subject to the conditions of Section 31840.2, and to delineate the financial obligations of each system and related political entity so that no system or political entity shall be liable for more than its just financial obligation."

A member establishes reciprocity by (1) leaving employment and deferring retirement from one public entity; and (2) within the applicable time period, becoming a member of (a) CalPERS, (b) another retirement system governed by the CERL in another county, (c) California State Teachers' Retirement System, or (d) a retirement system of any other public agency of the state that has established reciprocity with CalPERS. (§§ 31831, 31840.4.)

Section 31837 provides that a member who defers retirement from a prior employer in a retirement system subject to CERL, and who establishes reciprocity, "may be retired for disability, regardless of age or length of service, and receive a disability retirement allowance under this article based on the service credited to him at the time of retirement during any period thereafter in which he receives a disability retirement allowance under [CalPERS] or a retirement system established under this chapter in another county." When the disability is service connected, the allowance "shall be an annuity which is the actuarial equivalent of the member's accumulated contributions." (§ 31837, subd. (3).)

■ Reciprocity under Government Code, title 3, division 4, part 3, chapter 3, article 15 eliminates the adverse consequences a member might otherwise suffer when moving from one retirement system to another. For example, section 31833 provides that the member's age at entry into a reciprocal retirement system is the member's age of entry into the first reciprocal retirement system. Thus, section 31833 permitted Block to have his OCERS contributions based on his younger age when he entered CalPERS. Under CERL, members with a younger age of entry pay less in member contributions to the retirement system than members with an older age of entry.

Another example is section 31835, which permits a member to use his or her highest compensation while a member of any reciprocal retirement system for computing the member's retirement allowance from both retirement systems. Section 31835 states, in relevant part: "The average compensation during any period of service as a member of [any reciprocal retirement system] shall be considered compensation earnable by a member for purposes

of computing final compensation for that member [from both systems]." To take advantage of section 31835, the member must retire concurrently under both systems and be credited "with the period of service under that other system at the time of retirement." (§ 31835, subd. (2).)

In a similar vein, section 31836 provides that a member's "service," for purposes of qualification for payment of benefits and retirement allowances, includes service as a state employee or as an employee of another county with a retirement system governed by CERL, if the compensation for such service qualifies under section 31835.

A purpose and an effect of these reciprocity provisions are to treat a member retiring concurrently from reciprocal retirement systems as having been employed by a single employer and having been a member of a single retirement system for the member's entire career, for purposes of calculating retirement benefits. As applied here, reciprocity means Block would be treated as having served his entire career as an employee of the Orange County Fire Authority, even though he served the first 28 years of his career with the Buena Park Fire Department.

B. *Related CERL Provisions*

The CERL's reciprocity provisions do not set forth the formulas for calculating the dollar amount a member may receive as a disability or retirement allowance. Those are contained in articles 7.5 and 8 of title 3, division 4, part 3, chapter 3 of the Government Code.

Pertinent here is section 31727.4, which sets forth the amount a member may receive in service-connected disability. Section 31727.4 reads, in relevant part: "Upon retirement of any member for service-connected disability, he shall receive an annual retirement allowance payable in monthly installments, equal to one-half of his final compensation. [¶] Notwithstanding any other provisions of this chapter, any member upon retirement for service-connected disability shall receive a current service pension or a current service pension combined with a prior service pension purchased by the contributions of the county or district sufficient which when added to the service retirement annuity will equal one-half of his final compensation, or, if qualified for a service retirement, he shall receive his service retirement allowance if such allowance is greater but in no event shall it exceed the limitation as set forth in Section 31676.1 as it now reads or may hereafter be amended to read."

Section 31727.4 does not use the term "disability allowance," but states that "[u]pon retirement of any member for service-connected disability," the

member shall receive "an annual retirement allowance." The retirement allowance may be an amount equal to one-half of the member's final compensation, or, if the member qualifies, the amount the member would receive as a service retirement allowance, whichever amount is greater.

The term "disability allowance" is found in section 31727.7, concerning nonservice-connected disability retirement. Section 31727.7 provides, in relevant part: "Upon retirement for nonservice-connected disability, in lieu of any other allowance, a member who has five years or more credited service shall receive a disability allowance equal to the percentage of final compensation set forth . . . in the following table . . . ."

Section 31664 includes the formulas for calculating the amount of service retirement allowance for "safety members," such as Block. Both sections 31664 and 31727.4 expressly incorporate the limitation set forth in section 31676.1, which caps the total amount a member may receive in service retirement at the amount of the member's final compensation. Section 31676.1 states, in part: "[I]n no event shall the total retirement allowance exceed the member's final compensation." Neither section 31676.1 nor section 31727.4 uses the term "disability allowance"; rather, both refer to the member's "retirement allowance."

Significant too, the provisions regarding the amount of retirement allowance distinguish between the "service retirement annuity," the "current service pension," and the "prior service pension." The "service retirement annuity" is an annuity based on the member's contributions. (§ 31674.) The "current service pension" and the "prior service pension" are pensions purchased with the employer's contributions. (§§ 31675, 31676.) None of these provisions uses the term "disability allowance."

In a petition for rehearing, Block for the first time cites to section 31725.7, which he argues demonstrates the Legislature's recognition that disability pensions and service pensions are "separate and distinct." Subdivision (a) of section 31725.7 permits a member to apply for a "service retirement allowance" pending determination of the member's entitlement to "disability retirement." Subdivision (b) of section 31725.7 states, in part: "This section shall not be construed to authorize a member to receive more than one type of retirement allowance for the same period of time nor to entitle any beneficiary to receive benefits which the beneficiary would not otherwise have been entitled to receive under the type of retirement which the member is finally determined to have been entitled." Section 31725.7 permitted Block to receive a service retirement allowance from OCERS pending its determination of his entitlement to disability allowance.

Section 31725.7 does recognize tacitly, if not expressly, that service retirement and disability retirement are different. But the issue in this case is the meaning of the term "disability allowance" in section 31838.5. Section 31725.7 does not use the term "disability allowance" or shed any light on what that term means in section 31838.5. Section 31725.7 therefore does not assist us in analyzing the meaning of the term "disability allowance."

## C. *Section 31838.5's Legislative History*

Former section 31838.5 (Stats. 1981, ch. 576, § 1, p. 2245) was enacted in response to a concern that members with reciprocal benefits under CERL could receive more in nonservice-connected disability than a member could receive in service-connected disability. A September 1979 Legislative Analyst's report stated: "Historically, persons retiring because of service-connected disabilities have been given special consideration due to the fact that their disability was job related. Consequently, rewarding nonservice-connected disabilities more than service-connected disabilities is contrary to long-standing retirement principles. Moreover, allowing some but not all retirees to multiply benefits is costly and provides a windfall to a select group of persons. [¶] *We recommend that a new section be added to the Government Code prohibiting reciprocal retirement allowances from being greater than what would have been received if the employee had remained in one system.*" (Legis. Analyst, Review of Retirement Systems Established Under the County Employees' Retirement Law of 1937, Rep. Pursuant to Sen. Conc. Res. No. 27 (1977–1978 Reg. Sess.) p. 37.)

Senate Bill No. 192 (1981–1982 Reg. Sess.) was introduced in response to that recommendation. (Assem. Com. on Public Employees & Retirement, Analysis of Sen. Bill No. 192 (1981–1982 Reg. Sess.) as amended May 20, 1981, pp. 2–3.) Senate Bill No. 192's stated purpose was to "add[] restrictive language to preclude multiple disability retirements from [the CERL]." (Sen. Com. on Public Employment & Retirement, Analysis of Sen. Bill No. 192 (1981–1982 Reg. Sess.) May 14, 1981, p. 1.)

The Assembly committee analysis explained: "The purpose of reciprocity is to permit movement of employees from public employer to public employer without impairment of retirement rights. Reciprocity protects the individual retirement system by avoiding the transfer of financial liabilities and by relying upon the exchange of information between the systems at the time of movement of the employee and at the time of retirement. [¶] It is understood that the intent of SB 192 is to preclude the payment, under [the CERL], of multiple disability retirement allowances, in instances in which a member had served a qualifying number of years in more than one retirement system." (Assem. Com. on Public Employees & Retirement, Analysis of Sen.

Bill No. 19 (1981–1982 Reg. Sess.) as amended May 20, 1981, p. 2.) The analysis concluded that Senate Bill No. 192 (1981–1982 Reg. Sess.) "would provide that a [CERL] county member who is eligible for any benefit pursuant to Section 31838 of [the CERL] could not receive a disability allowance from one [CERL] county that, when combined with any amount from other counties or the [Cal]PERS, would result in a pension greater than the amount the member would have received had all the member's service been with one county only." (Assem. Com. on Public Employees & Retirement, Analysis of Sen. Bill No. 192 (1981–1982 Reg. Sess.) p. 3.)

The Legislative Counsel's Digest of Senate Bill No. 192 (1981–1982 Reg. Sess.) explained as follows: "The [CERL] authorizes members who are entitled to rights and benefits from two or more retirement systems to receive, among other things, disability benefits based upon service in all systems. [¶] This bill would specify that no provision of that law shall be construed to authorize such a member to receive a combined disability pension in excess of what would have been received if all of the member's service was with only one county."

Senate Bill No. 192 (1981–1982 Reg. Sess.), enacted in 1981 (Stats. 1981, ch. 576, § 1, p. 2245), and codified as former section 31838.5, provided: "No provision of this chapter shall be construed to authorize any member, credited with service in more than one entity and who is eligible for a nonservice connected disability allowance, to receive an amount from one county that, when combined with any amount from other counties or the Public Employees' Retirement System, results in a *pension* greater than the amount the member would have received if all the member's service has been with only one entity. [¶] Each entity shall calculate its respective obligations based upon the member's service with that entity and each shall adjust its payment on a pro rata basis." (Italics added.)

The first paragraph of former section 31838.5 differed in two ways from the first paragraph of current section 31838.5 (Stats. 1984, ch. 767, § 1, p. 2760). First, former section 31838.5 referred only to a member eligible for nonservice-connected disability allowance, while current section 31838.5 refers to both service-connected and nonservice-connected disability allowance. Second, former section 31838.5 used the word "pension," while current section 31838.5 replaced the word "pension" with the term "disability allowance."

The changes to former section 31838.5 resulted from Senate Bill No. 1142 (1983–1984 Reg. Sess.), introduced in 1983 by State Senator Speraw and

sponsored by the Los Angeles County Board of Supervisors.[3] A report by the Assembly Committee on Public Employees and Retirement explained the genesis of Senate Bill No. 1142: "SB 192 was the result of a study of the Legislative Analyst, which concluded that due to reciprocity it was possible for a member serving in more than one retirement system, to qualify for several non-job related benefits. In such instances, the total amount received by the member could exceed the final compensation earned by the injured individual. [¶] Los Angeles County, the sponsor of SB 1142, states that instances have occurred where a county employee, retired for a *job connected* disability under [Cal]PERS, has come to work for a [CERL] County, and has applied for, and had received, a job connected disability under a county system. In such cases, the combined disability allowances could exceed 100% of salary. [¶] SB 1142 would subject job related disability allowances to the same restrictions as placed on non-job related allowances by SB 192." (Assem. Com. on Public Employees & Retirement, Rep. on Sen. Bill No. 1142 (1983–1984 Reg. Sess.) as amended May 23, 1983, pp. 1–2.)

The Legislative Counsel's Digest of Senate Bill No. 1142 (1983–1984 Reg. Sess.) stated: "The [CERL] authorizes members who are entitled to rights and benefits from two or more retirement systems to receive, among other things, disability benefits based upon service in all systems, and specifies that no provision of that law shall be construed to authorize such a member to receive a combined nonservice-connected disability pension in excess of what would have been received if all of the member's service has been with only one entity. [¶] This bill would also apply this limitation to service-connected disability allowances payable to members who, after being employed with another county or an entity within the Public Employees' Retirement System, become employed by a second public entity on or after January 1, 1984, *and make technical changes*." (Legis. Counsel's Dig., Sen. Bill No. 1142 (1983–1984 Reg. Sess.) as amended May 23, 1983, original italics.)

An analysis by the Senate Committee on Public Employment and Retirement explained the purpose of Senate Bill No. 1142 (1983–1984 Reg. Sess.) was to "limit[] a [CERL] county employee's ability to concurrently receive any type of disability retirement allowance from more than one [CERL] county, or a [CERL] county and [Cal]PERS." (Sen. Com. on Public Employment & Retirement, Analysis of Sen. Bill No. 1142 (1983–1984 Reg. Sess.) p. 1.) Noting that "[e]xisting law does not provide any limits on service connected disability allowances," the committee analysis stated Senate Bill No. 1142

---

[3] Both *Block* and *OCERS* ask us to consider letters and statements that are not part of the legislative history of Senate Bill No. 1142 (1983–1984 Reg. Sess.). (See *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 31–39 [34 Cal.Rptr.3d 520].) We decline to do so, and have considered only those documents recognized as constituting cognizable legislative history. (*Ibid.*)

"provides that individuals who receive service connected disabilities, after 1-1-84, shall be subject to the same limits as are already in place for non-service connected disabilities." (Sen. Com. on Public Employment & Retirement, Analysis of Sen. Bill No. 1142, *supra*, p. 1.)

As originally introduced, Senate Bill No. 1142 (1983–1984 Reg. Sess.) provided, in relevant part: "No provision of this chapter shall be construed to authorize any member, credited with service in more than one entity and who is eligible for a disability allowance, to receive an amount from one county that, when combined with any amount from other counties or the Public Employees' Retirement System, results in a *pension* greater than the amount the member would have received had all the member's service been with only one entity." (Italics added.) As enacted, Senate Bill No. 1142 inserted the phrase "whether service connected or nonservice connected" after the term "disability allowance" and before the words "to receive," and replaced the word "pension" with the term "disability allowance." (Stats. 1984, ch. 767, § 1, p. 2760.)

IV.

*Analysis of Section 31838.5's Language in Light of the*
*CERL Reciprocity Provisions, Related CERL Provisions, and*
*Section 31838.5's Legislative History*

■ Analysis of section 31838.5's language in light of the CERL reciprocity provisions, related CERL provisions, and section 31838.5's legislative history leads us to conclude the term "disability allowance" in section 31838.5 refers to all amounts the member receives in reciprocal benefits when retiring due to disability, regardless whether those amounts are labeled "disability retirement" or "service retirement."

■ The term "disability allowance" is used twice in section 31838.5: First in referring to a member "who is eligible for a disability allowance"; and second in stating the amount the retiring member receives must not result in "a disability allowance greater than the amount the member would have received had all the member's service been with only one entity."

The term "disability allowance" is not defined in the CERL. (See Gov. Code, tit. 3, div. 4, pt. 3, ch. 3, art. 1, § 31450 et seq. [the CERL general provisions, including definitions].) As explained *ante*, it does not appear in section 31727.4, which states a member retiring for service-connected disability receives "an annual retirement allowance" equal to half the member's final compensation, or, if qualified, a service retirement allowance. The term "disability allowance" does appear in section 31727.7, which provides that a

member with five years or more of service and who is retiring for nonservice-connected disability, may, instead of any other allowance provided, receive a "disability allowance" determined according to a table included in the statute.[4]

This distinction between sections 31727.4 and 31727.7 is important to understanding the meaning of "disability allowance" in section 31838.5. As initially enacted, former section 31838.5 applied only to nonservice-connected disability. It read: "No provision of this chapter shall be construed to authorize any member, credited with service in more than one entity and who is eligible for a *nonservice connected disability allowance*, to receive an amount from one county that, when combined with any amount from other counties or the Public Employees' Retirement System, results in a *pension* greater than the amount the member would have received if all the member's service has been with only one entity." (Stats. 1981, ch. 576, § 1, p. 2245, italics added.) The term "nonservice connected disability allowance" must have referred back to section 31727.7 because a member retiring for nonservice-connected disability with at least five years of service is eligible for a "disability allowance" pursuant to that section.

As explained *ante*, former section 31838.5 was amended in 1984 so that it would apply to service-connected as well as to nonservice-connected disability retirement. The amendment was accomplished by deleting "nonservice connected" from the phrase "nonservice connected disability allowance" and thereafter inserting the phrase "whether service connected or nonservice connected." However, in making this amendment, the Legislature did not change the term "disability allowance."

But a member retiring for service-connected disability is not eligible for a disability allowance; instead, under section 31727.4, such member is eligible for an annual retirement allowance or service retirement. Section 31838.5 applies both to nonservice-connected and service-connected disability retirement, so it makes sense for the term "disability allowance," itself inapplicable to service-connected disability, to refer to section 31727.4 when the disability retirement is service connected. When the member retires for service-connected disability, the term "disability allowance" in section 31838.5 thus

---

[4] Several code sections define the amount in benefits a member may receive when retiring for a nonservice-connected disability. (See §§ 31726 [member 65 years or older, or member under 65 and not simultaneously retiring from reciprocal system], 31726.5 [safety member 55 years or older, or under 55 and not simultaneously retiring from reciprocal system], 31727 [amount of nonservice-connected disability retirement pension], 31727.1 [amount of nonservice-connected disability retirement pension in certain counties], 31727.2 [amount of nonservice-connected disability retirement pension for safety members], 31727.3 [amount of nonservice-connected disability retirement pension in certain counties].) The code sections use the term "disability retirement allowance," "disability retirement pension," or "retirement allowance," but not "disability allowance."

refers to the benefit the member would receive under section 31727.4—either one-half of the member's final compensation, or service retirement.

The term "disability allowance" should be accorded the same or equivalent meaning the second time it is used in section 31838.5. When used the second time in section 31838.5, "disability allowance" means the amount of retirement benefit the member would receive from a reciprocal CERL retirement system or from CalPERS when the member concurrently retires due to disability. For service-connected disability from a reciprocal CERL system, that amount under section 31727.4 could be half of the member's final compensation *or* service retirement, *or* the amount paid under the reciprocal retirement system. "Disability allowance" under section 31838.5 therefore can include the amount of service retirement a member might receive when retiring due to disability.

Under CalPERS, a member retiring for disability concurrently with retiring from an employer with a reciprocal CERL system may receive service retirement. Part of a CalPERS information brochure, entitled "Reciprocal Benefits & Requirements," informs the CalPERS member "[i]f you are eligible for disability retirement from your other system . . . , you may also be entitled to CalPERS disability retirement benefits, if you retire from both systems on the same date." The brochure explains that "CalPERS will pay an amount that does not exceed the difference between what you are going to receive from the other system and what you would receive if all your CalPERS service were also credited with that system. . . . [¶] If you retire from your other system because of a work-related disability, CalPERS will pay an annuity that is the actuarial equivalent of your CalPERS contributions." CalPERS also offers the alternative of service retirement: "If you meet the CalPERS minimum age requirements, you may find it to your advantage to take *service* retirement from CalPERS and still take disability retirement from your other system."

CalPERS thus offers the member retiring for disability from a reciprocal system the option of receiving a disability retirement benefit, or, to qualified members, service retirement. To receive the CalPERS disability benefit or service retirement, the member must retire concurrently from both systems. Accordingly, the CalPERS benefit—whether labeled disability retirement or service retirement—is being paid because the member retired for disability and may constitute part of "disability allowance" under section 31838.5.

Here, Block's disability allowance from OCERS, combined with the retirement benefits he receives from CalPERS, results in a disability allowance greater than the amount Block would have received if all of his service had been with one entity. Block's annual retirement allowance under section

31727.4, combined with his service retirement under CalPERS, produces a monthly benefit of $8,623—over 122 percent of his final compensation. Had Block accepted normal service retirement effective May 20, 2002, he would have received a monthly benefit of $6,537.78, based on a highest final average monthly salary of $7,021.15 and 35.543 years of combined service in the Buena Park Fire Department and the Orange County Fire Authority. OCERS therefore may adjust its benefits payment to Block on a pro rata basis pursuant to section 31838.5.

Interpreting the term "disability allowance" in section 31838.5 to mean all retirement benefits received for retirement due to disability, including service retirement, is consistent with the purposes of the CERL reciprocity provisions. The legislative purpose in enacting the CERL reciprocity provisions, as stated in section 31830, was "to encourage career public service by granting reciprocal retirement benefits to members who are entitled to retirement rights or benefits from two or more retirement systems established under this chapter," and "to delineate the financial obligations of each system . . . so that no system . . . shall be liable for more than its just financial obligation." The Assembly committee's analysis also expressed this twofold purpose by stating the intent (1) "to permit movement of employees from public employer to public employer without impairment of retirement rights"; and (2) to "protect[] the individual retirement system by avoiding the transfer of financial liabilities." (Assem. Com. on Public Employees & Retirement, Analysis of Sen. Bill No. 192, *supra*, p. 2.)

■ Our interpretation of "disability allowance" in section 31838.5 fulfills the purpose of encouraging employee movement without impairment of retirement benefits. Although Block's interpretation of section 31838.5 is not inconsistent with this purpose, it goes too far by creating a greater benefit for employees, such as Block, who due to disability are eligible for service retirement from a reciprocal system or CalPERS. The CERL reciprocity provisions were intended to prevent *impairment* of retirement benefits of a member who changed employers, not to place such members in a better position than those who remained with the same employer throughout their service. Nothing in section 31838.5 or its legislative history supports the notion the Legislature intended to authorize greater retirement benefits to members who changed employers, such as Block, than to members who stayed with the same employer throughout their service.

In addition, in section 31838.5 and in other provisions, the CERL evinces an overarching policy that a member should not receive more in retirement than the member received as final compensation. Section 31676.1 states, in part: "[I]n no event shall the total retirement allowance exceed the member's final compensation." Section 31664, which sets forth the formulas for calculating the amount of service retirement allowance for "safety members," and

section 31727.4, which sets forth the amount of service-connected disability retirement, expressly incorporate the limitation of section 31676.1. A member retiring due to disability, whose service had been with only one entity, thus could not receive more in retirement than he or she received as final compensation. Section 31838.5 does not authorize a member retiring due to disability and eligible for reciprocal benefits to receive any more.

The legislative history of section 31838.5 too supports our interpretation. Senate Bill No. 192 (1981–1982 Reg. Sess.) was introduced in response to a concern that members retiring for nonservice-connected disability were receiving an amount in reciprocal benefits greater than the amount they would receive had they been employed by a single entity. The Legislative Counsel's Digest of Senate Bill No. 192 stated, "[t]his bill would specify that no provision of [the CERL reciprocity provision] shall be construed to authorize such a member to receive a combined disability pension in excess of what would have been received if all of the member's service was with only one county." Senate Bill No. 1142 (1983–1984 Reg. Sess.) was introduced to extend the same limitation to members retiring for serviced-connected disability. The various sources of legislative history use the terms "disability retirement benefit," "disability benefit," "disability allowance," "pension," "disability pension," and "disability retirement benefit" interchangeably, and apparently synonymously. The use of a particular term in one part of the legislative history, and another term in another part, does not necessarily shed light on what the Legislature meant. What we can glean from the legislative history is an expression of the Legislature's intent that a member retiring due to service-connected or nonservice-connected disability shall not receive in reciprocal benefits—however labeled—an amount greater than what the member would receive if all of the member's service had been with one entity.

Senate Bill No. 1142 (1983–1984 Reg. Sess.), as enacted, replaced the word "pension" in section 31838.5 with the term "disability allowance." Block argues this change demonstrates the Legislature did not intend service retirement benefits to be subject to section 31838.5. In response, amici curiae argue that under the CERL the word "pension" has the specific meaning of benefits paid by employer contributions (see §§ 31675, 31676), so that "Senate Bill 114[2]'s revised reference to 'disability allowance' thus encompasses *both* a member's 'annuity' *and* a member's 'pension . . . .[']" As explained *ante*, reading section 31838.5 as a whole, and in context with the CERL, we conclude the Legislature used the term "disability allowance" in section 31838.5 to mean any benefits a member receives for retiring due to disability.

As to the second purpose of the reciprocity provisions of section 31838.5, our interpretation ensures each employing entity pays no more than its fair

share of the disabled member's retirement benefit. Block's interpretation of section 31838.5 is contrary to that purpose. Under Block's interpretation, OCERS could be liable for nearly 50 percent of his total retirement compensation, even though he worked for the County of Orange for only about 7.68 years out of over 35.5 years of service.

We reach our conclusion independently, based on our analysis of the law. We therefore do not address whether or to what extent we should defer to the retirement board of OCERS in interpreting section 31838.5.

## DISPOSITION

The judgment is reversed and the matter is remanded with directions to enter judgment in favor of OCERS. Appellant to recover costs incurred on appeal.

Rylaarsdam, Acting P. J., and O'Leary, J., concurred.

A petition for a rehearing was denied May 7, 2008, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied June 18, 2008, S163668. George, C. J., Werdegar, J., and Corrigan, J., did not participate therein.