[No. F059430. Fifth Dist. Aug. 31, 2011.]

MARSHA STILLMAN, Plaintiff and Appellant, v.
BOARD OF RETIREMENT OF THE FRESNO COUNTY EMPLOYEES'
RETIREMENT ASSOCIATION, Defendant and Respondent.

COUNSEL

Tardiff Law Offices, Neil S. Tardiff; Law Offices of Jesse L.B. Hill and Jesse L.B. Hill for Plaintiff and Appellant.

Reed Smith, Harvey L. Leiderman and Jeffrey R. Rieger for Defendant and Respondent.

OPINION

**CORNELL, Acting P. J.**—The trial court, sitting without a jury, rejected the claim of appellant Marsha Stillman for an increase in the retirement benefit paid to her by the Fresno County Employees' Retirement Association (FCERA). Judgment was entered in favor of respondent board of retirement (the Board), the governing body of FCERA. The issue we must resolve is whether the Board must determine the compensation upon which the retirement benefit is based from the Government Code definition of "compensation" used by FCERA or, instead, whether the Board must use the different definition of "compensation" established by the retirement plan of San Luis Obispo County. We conclude the trial court correctly determined that FCERA was required to apply the definition of "compensation" set forth in Government Code section 31460.[1] Accordingly, we will affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

Stillman was employed by Fresno County from 1969 through 1988; she accrued approximately 19 years of service credit as a member of FCERA. Stillman left her Fresno County employment and went to work for San Luis Obispo County; she accrued approximately 18 years of service credit as a member of the San Luis Obispo County Pension Trust (SLOCPT). When Stillman left her Fresno County employment, she deferred her retirement, as permitted by section 31831, because Fresno and San Luis Obispo Counties are "reciprocal" employers, a relationship we will discuss in more detail below.

Stillman retired from her San Luis Obispo County employment and concurrently filed for retirement from Fresno County, as required by section

---

[1] All further statutory references are to the Government Code unless otherwise stated.

31835.[2] Because reciprocal employers are each required to base an employee's retirement benefit upon the highest annual compensation earned from either employer, FCERA contacted San Luis Obispo County to ascertain Stillman's compensation. San Luis Obispo County informed FCERA that Stillman's highest average monthly salary for one year was $8,527.28. FCERA later determined, and Stillman does not dispute, that Stillman's base salary was $7,802.43 per month. In addition, however, San Luis Obispo County paid, as it did for all employees in Stillman's bargaining unit, an additional monthly amount to SLOCPT as the employee's retirement contribution. In Stillman's case, that amount was $724.85 per month. This amount is known as an employer "pickup." As a result of the San Luis Obispo County collective bargaining agreement covering Stillman, the employer pickup is designated as compensation for purposes of calculation of benefits under the retirement plan administered by SLOCPT.

FCERA notified Stillman that it deemed Stillman's compensation to exclude the employer pickup pursuant to (1) the statutory definition of "compensation"; (2) its own formal resolution addressing the issue; and (3) the terms of a class action settlement that further defined the provisions of the Fresno County employees' retirement plan. Stillman requested a hearing before the Board.

At the hearing, Stillman contended section 31835 required FCERA to use the definition of "final compensation" employed by SLOCPT, notwithstanding FCERA's definition for retirees who did not have reciprocal benefits with San Luis Obispo County. The Board decided to employ its own definition of "final compensation," thereby excluding the employer pickup as additional compensation to which the retirement formula was to be applied. (According to the parties, the resulting difference in Stillman's monthly retirement benefit was approximately $400.)

Stillman filed the present action on March 24, 2008. The matter was tried to the trial court sitting without a jury. The trial court entered judgment for the Board and, in its accompanying written statement of decision, it determined the Board had correctly applied the relevant statutory definitions of

---

[2] Section 31835 provides, as applicable in this case: "The average compensation during any period of service as a member of [a reciprocal retirement system] shall be considered compensation earnable by a member for purposes of computing final compensation for that member [for any other reciprocal retirement system] provided: [¶] (1) The period intervening between active memberships in the respective systems does not exceed [certain time limits] . . . [¶] . . . [¶] (2) He or she retires concurrently under both systems and is credited with the period of service under that other system at the time of retirement. [¶] The provisions of this section shall be applicable to all members and beneficiaries of the system." We will discuss in detail the meaning of the various terms used in section 31835 in the Discussion, *post.*

"compensation" and "final compensation" as the basis for Stillman's retirement benefit. In addition, and as an alternative basis for the judgment, the trial court determined that Stillman's claim was barred by the waivers and releases contained in the class action settlement agreement, which had been incorporated into the final judgment in a class action.

## DISCUSSION

Stillman contends the definition of "compensation" contained in the San Luis Obispo County retirement plan is the operative definition for FCERA because of section 31835. She also argues the class action settlement agreement is inapplicable to the present dispute because the settlement involved only the terms of retirement benefits arising from service with Fresno County, not to terms arising from dual service under the reciprocity statute.

We will not address the alternative basis for the judgment, namely, the waiver and release terms of the class action judgment, as we conclude the applicable definition of "compensation" is the statutory definition employed by the Board and by the trial court. We thus turn to the definitions that govern Stillman's right to retirement benefits.

FCERA was formed and operates under the provisions of the County Employees Retirement Law of 1937 (CERL), section 31450 et seq. "Under CERL an employee's pension is a combination of a retirement annuity based on the employee's accumulated contributions supplemented by a pension established with county contributions sufficient to equal a specified fraction of the employee's 'final compensation.' [Citations.] Other provisions of CERL limit the amount of employee pensions to a percentage of [citation], or not more than [citation], the employee's 'final compensation.' " (*Ventura County Deputy Sheriffs' Assn. v. Board of Retirement* (1997) 16 Cal.4th 483, 490 [66 Cal.Rptr.2d 304, 940 P.2d 891] (*Ventura County*).) "Final compensation" is defined in detail in *Ventura County* and in the various sections of the Government Code discussed in that case. (See *Ventura County*, at pp. 490–507.) The parties here agree that pursuant to the authority of *Ventura County* and CERL, pickup payments are not part of the final compensation for calculation of benefits under CERL.

San Luis Obispo County did not establish its retirement system under CERL. Instead, it established SLOCPT pursuant to the authority granted cities, counties, and other local agencies to establish pension trust funds under section 53215 et seq. Benefits under the SLOCPT plan are calculated based upon a member's final compensation, multiplied by an attained age percentage factor and a pension trust service credit. In other words, in a

manner similar to the CERL retirement calculation, a member's age at retirement and his or her length of service with the employer control the percentage of the member's final compensation the member receives as a pension benefit. The definition of "compensation"—and therefore "final compensation"—generally applicable for SLOCPT purposes essentially mirrors the definition of "compensation" under CERL.

Under the generally applicable terms of SLOCPT, the parties agree, employer payments of employee contributions to the pension fund would not be compensation, just as they would not be under CERL. For certain bargaining units within county employment, however, including the unit of which Stillman was a member, SLOCPT bylaws provide: " 'Compensation' shall also include the amount of the Member's Normal Contributions and any Member Additional Contributions 'picked up' by the Employer (i.e. paid by the Employer on the Member's behalf) provided that the 'pick up' " meets certain requirements of the federal tax code.

■ It sometimes happens that a member of one governmental retirement system leaves employment and subsequently is employed by a different governmental entity with a different retirement system. If both of the retirement systems have established reciprocity with the state's Public Employees' Retirement System (CalPERS) pursuant to section 31840.2, and the employee begins working for the second employer within a short time after leaving the first employment (normally six months) (see §§ 31835, subd. (1), 31840.4), the employee is entitled to retirement benefits based upon the highest compensation earned from either employer if the employee retires concurrently under both systems. (§ 31835; see also §§ 31831 [permitting deferral of retirement when entering into new employment with a reciprocal employer], 53222 [non-CERL pension plans]; see generally *Block v. Orange County Employees' Retirement System* (2008) 161 Cal.App.4th 1297, 1307–1309 [75 Cal.Rptr.3d 137] (*Block*).) The parties agree that both FCERA and SLOCPT have established reciprocity with CalPERS. The parties also agree Stillman went to work for San Luis Obispo County within the statutory time after she left Fresno County employment. Finally, the parties agree that Stillman filed for Fresno County retirement concurrently with her retirement from San Luis Obispo County.

What the parties do not agree about is whether FCERA is required by section 31835 to use as final compensation for its calculations the final compensation established by SLOCPT for its own use.

■ CERL defines "compensation," "compensation earnable," and "final compensation." The definitions build upon each other, with *final compensation* ultimately providing the basis for calculation of retirement benefits.

Section 31460 provides: " 'Compensation' means the remuneration paid in cash out of county or district funds, plus any amount deducted from a member's wages for participation in a deferred compensation plan . . . ." Because employer pickups are not paid in cash to the employee, they are not considered to be part of compensation for CERL purposes. (*In re Retirement Cases* (2003) 110 Cal.App.4th 426, 482 [1 Cal.Rptr.3d 790].)

■ *Compensation earnable* is the "average compensation as determined by the board, for the period under consideration upon the basis of the average number of days ordinarily worked by persons in the same grade or class of positions during the period, and at the same rate of pay." (§ 31461.) Even if the employee receives cash remuneration for services—thus, compensation—the payments do not count toward compensation earnable unless such payments are typical for employees in that grade, class or position. In other words, compensation earnable excludes overtime pay, but includes extra pay for special skills or certifications, such as bilingual premium pay. (*Ventura County, supra*, 16 Cal.4th at pp. 504 [excludes overtime], 499 [includes premium pay], 488 [examples of premium pay].)

■ *Final compensation* is "the average annual compensation earnable by a member during any year elected by a member at or before the time he files an application for retirement, or, if he fails to elect, during the year immediately preceding his retirement." (§ 31462.1.) Thus, in order to be the basis for calculation of retirement benefits under CERL, compensation not only must be paid to the employee, it must be typical for the grade or position held by the employee, and it must constitute the average of such pay over the course of a year.[3]

Final compensation, therefore, is a refinement of the broader category of compensation earnable that looks to the *time* when the compensation was earned. Thus, section 31462.1 (1) permits the employee to select *any* year of compensation, even if his or her compensation at the time of retirement reflects wage cuts or demotions, and (2) requires that the amount of compensation be averaged over a continuous one-year period. But both of these temporal adjustments operate upon the already defined "compensation earnable"; section 31462.1 does not *establish* compensation earnable.

Section 31835, upon which Stillman relies, is contained in title 3, division 4, part 3, chapter 3, article 15. As set forth in footnote 1, *ante*, section 31835 provides that the "average compensation during any period of service . . .

---

[3] Employer pickups do not make it into the final category of final compensation because they do not make it into the first category of compensation, of which final compensation is a statutory subcategory. (See *Ventura County, supra*, 16 Cal.4th at p. 494.)

shall be considered compensation earnable by a member for purposes of computing final compensation for that member . . ." under the limitations already described.

Stillman contends the Legislature intended to redefine "compensation" in section 31835 for the limited purpose of calculating retirement benefits for a CERL employee who has been employed by a non-CERL reciprocal employer, even though compensation as the basis for retirement benefits is carefully and explicitly defined in section 31460, and even though section 31455 states that "the definitions and general provisions contained in this article [(including § 31460)] govern the construction of this chapter [(including § 31835)]" "[u]nless the context otherwise requires." Stillman does not cite any authority for this claim, nor does she explain why it is so. She merely states, "It is undisputed [Stillman's] average compensation under the SLOCPT system was $8,527.28 which legally included the employer pickup. As such, the reciprocal 'compensation earnable' under the FCERA system, notwithstanding any other provision to the contrary, *shall be* $8,527.28 for purposes of computing reciprocal 'final compensation.' " (Original boldface.) We disagree.

The obvious purpose of section 31835 is to modify, under some circumstances, the temporal limitation of section 31462.1. The latter section permits the employee to select the year of compensation to be used as the basis for retirement calculations, but impliedly limits that year to one during which the employee was working for the employer that is providing the retirement benefit. Section 31835, when applicable, allows the employee to select a different year—a year during which the employee was working for a different (but reciprocal) employer. And that is all it does.[4] The section does not change the statutory definition of either "compensation" or "final compensation," both of which provide the bedrock foundation upon which retirement benefits are calculated. Noncompensation does not become compensation just because it is paid by a reciprocal employer.

Stillman asserts the Court of Appeal in *Block, supra,* 161 Cal.App.4th 1297 "has interpreted section 31835 exactly as [Stillman] has interpreted it." *Block* dealt with entirely different issues than those before us; hence, the isolated language upon which Stillman seizes is not persuasive in resolving the questions before us.

---

[4] Other provisions of title 3, division 4, part 3, chapter 3, article 15—Reciprocal Benefits— do provide additional benefits to employees entering into reciprocal employment. (§§ 31830–31840.8.) For example, section 31833 provides that a qualifying employee shall be deemed to have entered the second retirement system at the age at which he or she entered the first retirement system, thus lowering his or her rate of contribution in the second system.

Block was a firefighter who worked for the Buena Park Fire Department for 27 years, through October 1, 1994. As a Buena Park firefighter, Block was a member of CalPERS. (*Block, supra,* 161 Cal.App.4th at p. 1303.) On October 1, 1994, Buena Park Fire Department merged with the Orange County Fire Authority and Block became a member of the Orange County retirement plan, which was established under CERL. (*Ibid.*)

After about six years, Block filed for service-connected disability retirement from Orange County and concurrently applied for regular service retirement from CalPERS. Because of his lengthy service in the CalPERS system and the high minimum benefit for service-connected disability from Orange County, Block's total pension from both entities would have equaled 122.8 percent of his final average compensation. (*Block, supra,* 161 Cal.App.4th at p. 1303.) The Orange County retirement board reduced Block's benefits, contending that pursuant to section 31838.5 Block's total benefits could not exceed 100 percent of his final compensation. (*Block,* at p. 1305.) The trial court concluded that the section 31838.5 limitation applied only to disability retirement benefits, not to regular service retirement benefits. (*Block,* at p. 1305.) The Court of Appeal reversed, concluding that the limitation covered all retirement benefits. (*Id.* at p. 1316.)

 In describing the statutory reciprocity system that gave rise to the dispute before it, the Court of Appeal stated: "Because Block retired concurrently from [the Orange County Employees' Retirement System] and CalPERS, section 31835 permitted him to use his highest salary under either retirement system to calculate his retirement benefits under both systems." (*Block, supra,* 161 Cal.App.4th at p. 1303.) It is obvious the Court of Appeal was not concerned with the technical definition of "compensation" earned in two systems that calculated such compensation differently. Immediately following the quoted language, the Court of Appeal stated that the Orange County retirement system calculated Block's average monthly compensation to be $7,021.15, while CalPERS calculated the average monthly compensation to be $6,793.42. The Court of Appeal merely noted this difference and did not state the basis for the different compensation determinations. Interestingly, under Stillman's construction of section 31835, there never could have been differing determinations. Stillman's construction would have required CalPERS to use the Orange County retirement system's compensation determination, but CalPERS did not do so. In any event, cases are not authority for questions they did not consider (e.g., *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 323 [93 Cal.Rptr.3d 559, 207 P.3d 20]), and we do not consider *Block* to be persuasive on the issues now before us.

## DISPOSITION

The judgment is affirmed. The Board is awarded its costs on appeal.

Gomes, J., and Kane, J., concurring.

Appellant's petition for review by the Supreme Court was denied November 30, 2011, S197090.