[L.A. No. 30689. Aug. 16, 1977.]

RICHARD MEREDITH, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
DEPARTMENT OF CONSERVATION et al., Respondents.

778

COUNSEL

Richman & Garrett and Lewis Garrett for Petitioner.

T. Groezinger, James J. Vonk, George S. Bjornsen, Richard A. Krimen, Robert M. Jakob, Arthur Hershenson and Frank C. Evans for Respondents.

OPINION

CLARK, J.—While committed to the custody of the Department of Corrections, petitioner was totally disabled during fire prevention activities for the Division of Forestry. The workers' compensation judge awarded him disability compensation at the maximum rate of $119 per week, commencing upon release from prison, and lifetime medical care. The Workers' Compensation Appeals Board confirmed the award of lifetime care but fixed disability at the minimum compensation rate of $35 per week. After denial of petition for reconsideration, petitioner sought review.

■ Petitioner does not dispute that at times relevant here Labor Code section 4458, subdivision (b), provided for a minimum award.[1] Rather, he contends the limitation denied him equal protection of the law.

Permanent disability benefits are based on the nature and extent of disability and on earnings. Within the statutory minimum and maximum range, the earnings component is fixed on the basis of actual earnings at time of injury unless employment is for less than 30 hours a week or

---

[1] Section 4458 has since been amended. (Stats. 1976, ch. 1347, § 7.)

unless prior earnings cannot be reasonably and fairly applied. (Lab. Code, § 4453.) In the latter situation, earning capacity—including potential future earnings—shall be considered. (*Goytia* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 889, 894 et seq. [83 Cal.Rptr. 591, 464 P.2d 47]; *Goytia* v. *Workmen's Comp. App. Bd.* (1972) 6 Cal.3d 660, 663 et seq. [100 Cal.Rptr. 136, 493 P.2d 864].)

Former Labor Code section 4458 established special rules for purposes of computing the disability compensation of volunteer firefighters. Subdivision (a) provided the earnings component for nonconvict firefighters shall be fixed at maximum irrespective of his earning from firefighting or other employment. Subdivision (b) provided the earnings component of convict earnings shall be at minimum, and subdivision (c) provided the convict shall receive no compensation benefits while confined in a penal institution.[2]

■ Categorization of incarcerated convicts from other members of society does not create a suspect classification invoking the strict scrutiny doctrine. In *Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 18 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351], this court pointed out the characteristics of a suspect classification: "Sex, like race and lineage, is an immutable trait, a status into which the class members are locked by *the accident of birth. What differentiates sex from nonsuspect statuses, such as intelligence or physical disability, and aligns it with the*

---

[2] Section 4458 provided: "(a) Except as provided in subdivision (b), if a member registered as an active firefighting member of any regularly organized volunteer fire department as described in Section 3361 suffers injury or death while in the performance of his duty as fireman, or if a person engaged in fire suppression as described in Section 3365 suffers injury or death while so engaged, then, irrespective of his remuneration from this or other employment or from both, his average weekly earnings for the purposes of determining temporary disability indemnity and permanent disability indemnity shall be taken at the maximum fixed for each, respectively, in Section 4453. Four times his average annual earnings in disability cases and in death cases shall be taken at the maximum limits provided in Sections 4452 and 4702 respectively. [¶] (b) In the case of an inmate of a penal or correctional institution who is deemed to be an employee under Section 3365, irrespective of his remuneration, his average weekly earnings for the purposes of determining temporary disability indemnity and permanent disability indemnity shall be taken at the minimum fixed for each, respectively, in Section 4453. Four times his average annual earnings in disability cases shall be taken at the minimum limit provided in Section 4452. [¶] (c) An inmate of a state penal or correctional institution who is deemed to be an employee under Section 3365 is not entitled to receive benefits under this division during the period he is confined in such institution, and the actual period of his confinement after the injury shall be offset against the period for benefits to which he is entitled under this division. Upon parole or release from the state penal or correctional institution, the inmate is entitled to such benefits for the remainder of the benefit period not so offset."

recognized suspect classifications is that the characteristic frequently bears no relation to ability to perform or contribute to society."

The status of a prisoner following conviction as a result of legal processes is not an immutable trait; the status bears "a relationship to ability to perform or contribute to society." (Cf. *In re Harrell* (1970) 2 Cal.3d 675, 693 [87 Cal.Rptr. 504, 470 P.2d 640].) In a similar situation, our courts—rejecting equal protection challenge to statutes limiting prisoner recovery for personal injury against the state—have refused to find a suspect classification. (*Hughes* v. *San Diego County* (1973) 35 Cal.App.3d 349, 351-353 [110 Cal.Rptr. 754]; *Reed* v. *City & County of San Francisco* (1965) 237 Cal.App.2d 23, 24-25 [46 Cal.Rptr. 543].) The strict scrutiny doctrine is not applicable. Rather, the rational relationship test is applied in determining equal protection challenges to prisoner classification for purposes of governmental liability for injury. (*Id.*; cf. *County of Los Angeles* v. *Superior Court* (1965) 62 Cal.2d 839, 846 [44 Cal.Rptr. 796, 402 P.2d 868]; *Corning Hospital Dist.* v. *Superior Court* (1962) 57 Cal.2d 488, 496 [20 Cal.Rptr. 621, 370 P.2d 325].) The same test has been applied in determining equal protection challenges to benefit classifications under the Workers' Compensation Act. (*Mathews* v. *Workmen's Comp. App. Bd.* (1972) 6 Cal.3d 719, 738-740 [100 Cal.Rptr. 301, 493 P.2d 1165]; *Western Indemnity Co.* v. *Pillsbury* (1915) 170 Cal. 686, 702-703 [151 P. 398]; *Saal* v. *Workmen's Comp. Appeals Bd.* (1975) 50 Cal.App.3d 291, 300 [123 Cal.Rptr. 506].)

■ " 'Wide discretion is vested in the Legislature in making the classification and every presumption is in favor of the validity of the statute; the decision of the Legislature as to what is a sufficient distinction to warrant the classification will not be overthrown by the courts unless it· is palpably arbitrary and beyond rational doubt erroneous. [Citations.] A distinction in legislation is not arbitrary if any set of facts reasonably can be conceived that would sustain it.' We presume the legislative classification is valid and will sustain it 'unless it is manifestly without support in reason.' (*Western Indemnity Co.* v. *Pillsbury, supra,* 170 Cal. 686, 702 [151 P. 398].)" (*Mathews* v. *Workmen's Comp. Appeals Bd., supra,* 6 Cal.3d 719, 739.)

■ Unless arbitrary, the fictitious earnings compo-nents must be upheld. Considerations of public policy and equality justify the legislative distinctions. Cognizant of the public service provided by the volunteer civilian firefighter and the potential loss of his earnings from other employment, the Legislature determined that the usual

benefit schedules should not apply but that a fictitious earnings component should be used. The liberal disability compensation program not only serves to counterbalance any sacrifice of earning power made to engage in firefighting activity, but also provides an incentive to engage in an important public service. Within the Legislature's broad discretion in fixing compensation benefits, it is obviously proper to pay firefighter disability compensation at the maximum scale regardless of actual earnings.

Firefighting does not deprive prisoners of the opportunity for earnings, and incentives exist for prisoners to engage in firefighting not applicable to nonprisoners. The Department of Corrections requires prisoners to work for compensation of between 2 cents and 35 cents per hour (Pen. Code, § 2700), and engaging in firefighting not only satisfies the work requirement but also helps to demonstrate the prisoner's desire to assume a productive role in society.

Nevertheless, recognizing the importance of prisoner firefighters, the Legislature determined to give them some disability benefits in contrast to most other working prisoners who were excluded from the workers' compensation system. (Former Pen. Code, §§ 2700, 2766, 2791.)[3]

While elevating prisoner firefighters above the basic prisoner exclusion, and providing full medical benefits and rehabilitation programs (Lab. Code, §§ 139.5, 4600), the Legislature chose to limit their disability benefits. The limitation obviously is in recognition that the prisoner, having removed himself from the competitive labor market, has neither significant earnings nor earning power, and when measured by salary at time of injury—the basic test—the prisoner ordinarily could not qualify for more than minimum disability compensation. Further, the normal obstacles faced by ex-prisoners in seeking employment upon release make any attempt to use the secondary measure—his earning *capacity*—speculative. ■ ■■■ ■ Weighing the above considerations, it was not unreasonable for the Legislature to conclude that for compensation purposes firefighting prisoners should not be classified with other injured volunteer firemen or with other injured prisoners but rather with those injured in private employment having earnings at or

---

[3]Penal Code sections 2700, 2766, and 2791 were amended while this case was pending. (Stats. 1976, ch. 1347, §§ 9, 10, 11.)

below the minimum.[4] Indeed, granting prisoner firefighters benefits in excess of nonprisoner workers suffering similar injury might be difficult to justify.

The award is affirmed.

Richardson, J., Sullivan, J.,* Wright, J.,† and Files, J.,‡ concurred.

**MOSK, J.**—I dissent.

This petitioner is no longer confined to prison but remains a paraplegic as a result of injuries suffered as a firefighter while in prison. I cannot agree that, merely because his injuries occurred while a prisoner, he is now and for the remainder of his life will be entitled to only a fraction of the benefits afforded to a firefighter who suffered the same disability but who was not a prisoner at the time of injury.

Petitioner has paid his debt to society and he is totally disabled; thus there is no rational basis for treating him differently from others who have suffered the same disability while engaged in the same activity. To do so is to impose punitive treatment upon this petitioner not merely for the penal term provided by law but for life.

The majority suggest no valid justification for the distinction they have drawn. Their opinion simply ignores the rights of a prisoner to compensation *after his release,* and justifies its holding that the classification is reasonable by looking to the status of one who is incarcerated. Thus, the majority declare that firefighting does not deprive a *prisoner* of the opportunity for earnings (*ante,* p. 782), and that a *prisoner* has neither significant earnings nor earning power (*ante,* p. 782). The opinion fails to recognize that petitioner is not now a prisoner, and that his injuries have

---

[4]Petitioner also claims that Labor Code section 4458, subdivision (b), has been repealed by implication based on the 1973 amendment to Labor Code section 4453. That section in its first paragraph sets forth the maximum and minimum limits of earnings for purposes of temporary and permanent disability indemnity, and in the last sentence provides, "Between these limits the average weekly earnings, except as provided in sections 4456 to 4459, shall be arrived at as follows: . . ." The quoted provision was not changed by the amendment, and since section 4458 is expressly excepted from the provisions of section 4453, amendments to the latter section do not repeal the former.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

†Retired Chief Justice of California sitting under assignment by the Acting Chairman of the Judicial Council.

‡Assigned by the Chairman of the Judicial Council.

in fact deprived him of the opportunity for significant civilian earnings for life.

The disregard of this crucial factor is particularly glaring since it is clear that subdivision (b) of former Labor Code section 4458 applied to compensation payments made only to prisoners *after* their release, and not to those still incarcerated. This is evident from subdivision (c) of that section, which provided that a prison inmate was not entitled to receive any benefits "during the period he is confined . . . ." Thus, the crucial question is not whether there is a rational basis for compensation distinction between a firefighter who is a prisoner and one who is not, but rather, whether a radical difference in treatment is justified between similarly disabled persons who are not in prison, some of whom sustained their injuries while they were prisoners.

In addition to the foregoing obvious defect in the majority rationale, their opinion upholds the validity of the presumption in subdivision (b) on another questionable ground. They reason that the Legislature could have determined the future earnings of a released prisoner were too speculative a standard upon which to base earnings for compensation because of the obstacles faced by ex-convicts in seeking employment.

, This rationalization is untenable for two reasons. First, it suggests that whenever the future earning capacity of an employee is speculative, if earnings at the time of injury are an inadequate measure, then the Legislature may properly presume earning capacity will be minimal. Such a presumption lacks a rational basis. We have made it abundantly clear that many factors enter into the calculus of earning capacity (see, e.g., *Goytia* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 889, 894 [83 Cal.Rptr. 591, 464 P.2d 47]; *Argonaut Ins. Co.* v. *Industrial Acc. Com.* (1962) 57 Cal.2d 589, 594 [21 Cal.Rptr. 545, 371 P.2d 281]), factors which no more justify an inflexible assumption of minimum than maximum earnings. Second, that the Legislature did not base the presumption in subdivision (b) upon the assertedly speculative character of an exconvict's future earnings is conclusively demonstrated by its enactment in 1976, subsequent to petitioner's injury, of an amendment to Labor Code section 4458 to eliminate the distinction between firefighters injured while prisoners and other volunteer firefighters.[1] Surely, the speculative

---

[1]Section 4458, as amended in 1976, provides, "If a member registered as an active firefighting member of any regularly organized volunteer fire department as described in Section 3361 suffers injury or death while in the performance of his duty as fireman, or if a person engaged in fire suppression as described in Section 3365 suffers injury or death while so engaged, then, irrespective of his remuneration from this or other employment

nature of post-release earnings of prisoners did not dissolve overnight to justify the 1976 amendment of section 4458.

Finally, the suggestion does not withstand scrutiny—and, indeed, it is a non sequitur—that prisoners have greater incentive to undertake firefighting duties than nonprisoners because a prisoner can, by volunteering, satisfy the Department of Corrections' work requirements and demonstrate his desire for a productive role in society. First, such benefits can be gained by fulfilling work assignments far less dangerous to the prisoner's person than firefighting. And second, the WCAB does not examine the subjective motivation of other injured firefighters. Thus, this purported rationale for a difference in treatment between the two classes of firefighters is indefensible.

In short, the majority proceed on a wholly incorrect premise in applying to this case a distinction regarding compensation for prisoners and for those not in prison. I would hold that this paraplegic victim, totally disabled for life and no longer a prisoner, must be afforded the same benefits as any other volunteer injured in the course of performing the duties of a firefighter.

Tobriner, Acting C. J., concurred.

Petitioner's application for a rehearing was denied September 15, 1977. Bird, C. J., Tobriner, J., and Mosk, J., were of the opinion that the application should be granted.

---

or from both, his average weekly earnings for the purposes of determining temporary disability indemnity and permanent disability indemnity shall be taken at the maximum fixed for each, respectively, in Section 4453. Four times his average annual earnings in disability cases and in death cases shall be taken at the maximum limits provided in Sections 4452 and 4702 respectively."