Filed 10/26/15

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| JOHN LARKIN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | S216986 |
| v. | ) | |
| | ) | Ct.App. 3 C065891 |
| WORKERS' COMPENSATION | ) | |
| APPEALS BOARD and THE CITY OF | ) | |
| MARYSVILLE | ) | |
| | ) | W.C.A.B. No. ADJ7191871 |
| Respondents. | ) | |
| _____ | ) | |

Labor Code section 4458.2 provides workers' compensation benefits to certain peace officers injured in the line of duty.[1]  The terms of the statute apply to any "active peace officer of any department as described in Section 3362 [who] suffers injury or death while in the performance of his or her duties as a peace officer."  (§ 4458.2.)  The statute likewise provides benefits to those injured while performing services as part of a so-called posse comitatus — a group of citizens convened by law enforcement authorities for certain limited law enforcement purposes, in accordance with section 3366 — and to certain reserve peace officers as described in section 3362.5.  (§ 4458.2.)  We granted review to determine

---

[1]     All statutory references are to the Labor Code unless otherwise indicated.

1

whether the benefits provided under section 4458.2 extend to both volunteer peace officers and to regularly sworn, salaried officers.

In light of the text of sections 4458.2 and 3362, their place in the structure of the statutory scheme, and the Workers' Compensation Appeals Board's (Board) interpretation of the statute, we conclude that section 4458.2 does not extend maximum indemnity levels to regularly sworn, salaried officers.[2] This conclusion is bolstered by a review of the legislative history governing the relevant statutory provisions. We therefore affirm the Court of Appeal's judgment.

## I.    BACKGROUND

On November 21, 2008, Officer John Larkin — while employed as a police officer by the City of Marysville (Marysville) — sustained injuries to his face and body in the course of duty. A workers' compensation judge (WCJ) was assigned to review Larkin's application for benefits. When considering Larkin's application, the WCJ determined that Larkin was indeed entitled to workers' compensation benefits, but not to the maximum indemnity levels available under section 4458.2.

As of July 2010, when the WCJ adjudicated Larkin's case, Marysville had paid Larkin temporary disability benefits of $671.07 per week from December 9, 2008, through April 29, 2010, for a total of $31,523.58. Marysville had likewise covered Larkin's injury-related medical treatments. After including educational incentive pay of $8.33 per month that had not previously been considered, the

---

[2]    The Court of Appeal in its opinion, and the parties in their briefing before this court, refer to section 4458.2's "maximum benefits." Because section 4458.2 operates by setting "weekly earnings" — for disability indemnity purposes — at the "maximum" levels in section 4453, "maximum benefits" are equivalent to "maximum indemnity levels" or "maximum indemnity payments." We use these latter two terms throughout this opinion.

2

WCJ determined Larkin's earnings to be $1,008.47 per week.[3]  Interpreting

sections 4458.2 and 3362, the WCJ found that they did not apply to regularly

sworn, salaried officers like Larkin.  The WCJ's analysis focused on the operation

of section 3362, concluding "it would be illogical and unnecessary to create a

statute [such as section 3362] to confer employment on a person who is so

obviously an employee [under section 3351] for purposes of workers'

compensation."  In light of the WCJ's ruling, Larkin was not entitled to the

maximum indemnity levels set out in section 4453.[4]  (See § 4458.2.)

[3]      The WCJ did not calculate Larkin's prospective temporary disability
indemnity benefits, but in finding Larkin's weekly earnings to be $1,008.47, it
appears that Marysville would have been obligated to make weekly payments to
Larkin totaling two-thirds of this amount.  (§ 4653 ["If the injury causes temporary
total disability, the disability payment is two-thirds of the average weekly earnings
during the period of such disability, consideration being given to the ability of the
injured employee to compete in an open labor market."].)

[4]      Section 4453, subdivision (a) (section 4453(a)) sets the limits used to
calculate disability indemnity levels.  The schedule of earnings is tied to the date
of injury and is presented as a range, such that an injured employee's average
weekly earnings for workers' compensation purposes are "[n]ot less than" a
certain amount and not "more than" another.  (*Ibid.*)  Section 4453, subdivision (c)
(section 4453(c)) governs the actual calculation of average weekly earnings,
including for those employed on what amounts to a full-time basis:  "Between the
limits specified in subdivisions (a) and (b), the average weekly earnings, except as
provided in Sections 4456 to 4459, shall be arrived at as follows: [¶] (1) Where the
employment is for 30 or more hours a week and for five or more working days a
week, the average weekly earnings shall be the number of working days a week
times the daily earnings at the time of the injury."  (§ 4453(c)(1).)

The last earnings range enumerated in the statute by a specific dollar
amount governed injuries occurring between January 1, 2006 and December 31,
2006.  (§ 4453(a)(10) [setting the range between $189 and $1,260 or "1.5 times
the state average weekly wage, whichever is greater"].)  For injuries like Larkin's,
which occurred on or after January 1, 2007, average weekly earnings were
"increased by an amount equal to the percentage increase in the state average
weekly wage as compared to the prior year," as reported by the United States
Department of Labor.  (*Ibid.*)  Had the WCJ found section 4458.2 applicable to

*(footnote continued on next page)*

3

Following this hearing, Larkin petitioned the Board for reconsideration. He argued that the two statutes' plain language entitled regularly sworn, salaried peace officers to maximum indemnity levels. The Board disagreed, finding the WCJ's reasoning persuasive and denying Larkin's petition.[5]

Larkin then sought a writ of review from the Court of Appeal. In affirming the Board's order, the Court of Appeal interpreted section 4458.2 to avoid what it deemed an "absurd result." It concluded that the policy considerations underlying section 4458.2 and section 3362, as well as other similar statutes, reflected a legislative interest in encouraging volunteer service to support police and fire agencies "by providing maximum benefits to volunteers injured in providing such service." The court also noted that because Larkin, as a regularly sworn, salaried peace officer, met the definition of "employee" under section 3351, he was entitled to the full range of workers' compensation benefits available to all employees, whether peace officers or not. (§ 3351 [" 'Employee' means every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed . . . ."].) Although the Court of Appeal did not enumerate which benefits Larkin was eligible to receive as an employee, all those who fall under section 3351 are eligible to receive benefits such as temporary disability and medical payments, among others. (§§ 4650 et seq. [mandating temporary

_____

*(footnote continued from previous page)*

Larkin, he would have been entitled to two-thirds of the maximum average weekly earnings, taking into account the increase in the state average weekly wage. (See § 4453(a)(10); see also § 4653 [setting temporary total disability payments as two-thirds of average weekly earnings].)

[5]     The Board adopted and incorporated the WCJ's report in its entirety.

disability indemnity payments where an injury causes temporary disability], 4600 [requiring employers to cover certain medical care for injured employees].)  Given the reach of section 3351, the Court of Appeal found no reason for a "special statute" like section 3362 to apply to officers like Larkin.  The Court of Appeal also evinced concern about the effects of Larkin's interpretation, which it believed would leave volunteer peace officers without workers' compensation if injured in the line of duty.  Accordingly, the court concluded that sections 4458.2 and 3362 apply only to volunteer peace officers.

We then granted Larkin's petition for review to address a single question: Whether section 4458.2 instead applies also to regularly sworn, salaried peace officers.

## II.    DISCUSSION

This case turns on our interpretation of two statutory provisions governing workers' compensation — sections 4458.2 and 3362.  In interpreting a statute, we begin with its text, as statutory language typically is the best and most reliable indicator of the Legislature's intended purpose.  (*Fitch v. Select Products Co.* (2005) 36 Cal.4th 812, 818; see also *Baker v. Workers' Comp. Appeals Bd.* (2011) 52 Cal.4th 434, 442.)  We consider the ordinary meaning of the language in question as well as the text of related provisions, terms used in other parts of the statute, and the structure of the statutory scheme.  (See *Lonicki v. Sutter Health Central* (2008) 43 Cal.4th 201, 209; *California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698; see also *Clean Air Constituency v. State Air Resources Bd.* (1974) 11 Cal.3d 801, 813-814; *People v. Rogers* (1971) 5 Cal.3d 129, 142 (conc. & dis. opn. of Mosk, J.) [in construing a statute, we do not look at each term as if "in a vacuum," but rather gather "the intent of the Legislature . . . from the statute taken as a whole"].)  If the statutory language in question remains ambiguous after we consider its text and the statute's

5

structure, then we may look to various extrinsic sources, such as legislative history, to assist us in gleaning the Legislature's intended purpose. (*Holland v. Assessment Appeals Bd. No. 1* (2014) 58 Cal.4th 482, 490.)

The Board's decision denying Larkin's petition for reconsideration, meanwhile, is an adjudication resolving a question of law. In adjudicating the question before it, the Board interpreted precisely the two statutes primarily at issue in this case — section 4458.2 and section 3362 — and applied those statutes to the particular circumstances of Larkin's case. We treat such adjudications as we do other official proceedings where agencies with relevant expertise, responsibility, and familiarity interpret a statute. (Cf. *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 11 (*Yamaha*) ["the binding power of an agency's *interpretation* of a statute or regulation is contextual: Its power to persuade is . . . dependent on the presence or absence of factors that support the merit of the interpretation"].) To wit: we give great weight to interpretations like these, rendered in an official adjudicatory proceeding by an administrative body with considerable expertise interpreting and implementing a particular statutory scheme. (See *id.* at pp. 12-13; see also *Brodie v. Workers' Comp. Appeals Bd.* (2007) 40 Cal.4th 1313, 1331 (*Brodie*) [noting the Board's "extensive expertise in interpreting and applying the workers' compensation scheme"].)

While we assign considerable importance to the agency's views, we also retain ultimate responsibility for interpreting the relevant statute. (See *Honeywell v. Workers' Comp. Appeals Bd.* (2005) 35 Cal.4th 24, 34.) If the agency's interpretation is clearly erroneous or unauthorized under the statute, we will not give effect to its understanding of the statute. (See *Yamaha*, *supra*, 19 Cal.4th at p. 12, citing *International Business Machines v. State Bd. of Equalization* (1980) 26 Cal.3d 923, 931, fn. 7; see also *Brodie*, *supra*, 40 Cal.4th at p. 1331 ["we give weight to [the Board's] interpretations of workers' compensation statutes unless

6

they are clearly erroneous or unauthorized"].) But where the Board's conclusion is not plainly at odds with the statutory scheme, we assign great weight to it. (See *Brodie*, at p. 1331 ["The Board's conclusion was not clearly erroneous and *is entitled to deference*" (italics added)]; see also *Yamaha*, at p. 12, citing *International Business Machines*.)

Section 4458.2 states in relevant part that "[i]f an active peace officer of any department as described in Section 3362 suffers injury or death while in the performance of his or her duties as a peace officer, . . . then, irrespective of his or her remuneration from this or other employment or from both, his or her average weekly earnings for the purposes of determining temporary disability indemnity and permanent disability indemnity shall be taken at the maximum fixed for each, respectively, in section 4453." Nothing in this text explicitly precludes the statute's application to regularly sworn, salaried officers. Nor does the language plainly apply only to volunteers. The statute does, however, explicitly relate the availability of benefits to another provision of the scheme, section 3362. That provision, in turn, states that "[e]ach male or female member registered as an active policeman or policewoman of any regularly organized police department having official recognition and full or partial support of the government of the county, city, town or district in which such police department is located, shall, upon the adoption of a resolution by the governing body of the county, city, town or district so declaring, be deemed an employee of such county, city, town or district for the purpose of this division and shall be entitled to receive compensation from such county, city, town or district in accordance with the provisions thereof." (§ 3362.)

Larkin contends that a straightforward reading of section 4458.2's text supports an equally straightforward conclusion: the statute does not restrict maximum indemnity levels to volunteer peace officers alone. He further argues

7

that the Legislature's decision in 1989 to remove the word "volunteer" from section 4458.2 demonstrates the legislative intent to broaden the statute's reach and bestow its benefits upon full-time, salaried peace officers.[6]  Larkin also posits that section 3362 does not exclusively apply to volunteer peace officers and, as such, is irrelevant to determining the issue before us in this case.

In contrast, Marysville argues that section 4458.2 must be read in conjunction with section 3362.  Section 3362 governs compensation for certain peace officers who otherwise would not come under the workers' compensation law's definition of "employee" in section 3351, and the benefits available under section 4458.2 track section 3362's own limits.  As such, Marysville contends, the disputed provision of section 4458.2 extends benefits only to volunteers and provides no recourse for regularly sworn officers.

A.  Sections 4458.2 and 3362:  Text and Structure

To answer the question before us we must understand the text of sections 4458.2 and 3362, as well as the structure of the statutory scheme encompassing both.  Section 4458.2 is a benefits-affording provision.  It does not make any worker eligible for compensation directly, but instead depends on cross-referenced provisions, including section 3362, to determine eligibility.  Under the clause of section 4458.2 at issue in this case, "[i]f an active peace officer of any department *as described in Section 3362* suffers injury or death while in the performance of his or her duties as a peace officer," then that officer is entitled to certain maximum indemnity levels as provided in section 4453.  (Italics added.)  Under

---

[6]     Prior to the 1989 amendment, section 4458.2 read, in relevant part:  "If a male member registered as an active police member of any regularly organized volunteer police department as described in Section 3362 . . . ."  (Stats. 1961, ch. 1581, § 1, p. 3408.)

the language of section 4458.2, section 3362 performs a limiting function. If section 3362 does not apply to regularly sworn, salaried peace officers, neither does section 4458.2. If, on the other hand, section 3362 applies to all peace officers, then section 4458.2 does as well.

Section 3362 appears in a chapter that defines employees for workers' compensation purposes and an article that does the same (see ch. 2, art. 2), but the statute never refers explicitly to volunteers. (§ 3362 ["Each male or female member registered as an active policeman or policewoman of any regularly organized police department . . . ."].) The statutory text does, however, suggest its inapplicability to regularly sworn, salaried peace officers. To see why, consider that the provision relates to those who "register[ ] as . . . active" police officers. (*Ibid.*) It makes eligible for workers' compensation benefits those officers who are "deemed . . . employee[s]" by a "resolution" of "the governing body of the county, city, town or district so declaring." (*Ibid.*) Regularly sworn, salaried peace officers need not "register" to become active police officers. (*Ibid.*) Their "active" status stems instead from the very nature of their employment. (*Ibid.*) Further, and as explained *post*, such officers are *already* employees by virtue of section 3351. There's no conceivable need for them to be "deemed" employees so they can qualify for workers' compensation; their eligibility does not depend upon the adoption of any "resolution" to that effect. (§ 3362.)

Although section 3362's text appears to shed some light on the Legislature's intended purpose, the text alone is not dispositive. While it may seem unlikely that the reference to someone "deemed" an employee by a "resolution" was simply a roundabout way of covering regularly sworn, salaried peace officers, the statute is not explicit about the scope of its coverage. (*Ibid.*) Nonetheless, the textual arguments are further bolstered by structural ones —

9

section 3362's place in the broader structure of the statutory scheme leaves little doubt about the statute's reach or purpose.

Chapter 2, article 2 of the workers' compensation law governs employees. Within this part of the scheme, section 3351 is of paramount importance. It defines "employee" for workers' compensation purposes, authorizing benefits for those who satisfy its conditions. (*Ibid.* [" 'Employee' means every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed . . . ."].)

This article is as pivotal as any in the entire statutory scheme, because it is the very source of eligibility for workers' compensation. It lists inclusions, exclusions, and exemptions, addressing the employment status of elected officials, corporate directors, independent contractors, disaster service workers, and others. (See, e.g., §§ 3351, 3351.5, 3352, 3352.94, 3353.) Most relevant to our inquiry is that several provisions within this article extend eligibility for workers' compensation benefits to certain categories of volunteers who otherwise would be ineligible under the law's definition of "employee" (§ 3351). Multiple sections of the article cover such categories of employees. They include volunteer firefighters (§ 3361), volunteer parks and recreation workers (§ 3361.5), and those performing voluntary services for public agencies (§ 3363.5, subd. (a)), private nonprofit organizations (§ 3363.6, subd. (a)), and school districts (§ 3364.5).[7]

---

[7] Some of these volunteers are deemed employees only where the jurisdiction or authority overseeing the volunteers so resolves. (E.g., §§ 3361.5 [volunteer parks and recreation workers], 3363.5 [public agency volunteers].) Others are deemed employees even without an authorizing resolution. (E.g., § 3361 [volunteer firefighters].)

Indeed, it is section 3351's limited reach that makes necessary these volunteer-specific provisions. Volunteers have no "appointment." (§ 3351.) They do not possess a "contract of hire," nor do they serve as apprentices. (*Ibid.*) In short, under section 3351, volunteers are not "employees" for workers' compensation purposes, and the scheme bestows no benefits upon those providing their critical services free of charge. To remedy this gap in coverage, the Legislature adopted a slew of statutes that defined the volunteers as "employees" for workers' compensation purposes. (E.g., §§ 3361, 3361.5, 3363.5, subd. (a), 3363.6, subd. (a), 3364.5.) And while section 3362 does not use the term "volunteer," there would be no specific need to enact this provision if it were meant to apply to regularly sworn, salaried peace officers. The reason why no such need exists is simple: volunteer peace officers do not come within the reach of section 3351, but regularly sworn, salaried peace officers do. To argue that section 3362 applies to these salaried officers is either to misunderstand the nature of their employment, or to suggest that these two sections — 3362 and 3351 — overlap in a way that is belied by the text and structure of the workers' compensation scheme. Regularly sworn, salaried police officers are employees, as defined under section 3351, and thus entitled to workers' compensation benefits *under that statute*. Without section 3362, regularly sworn, salaried peace officers would still be entitled to workers' compensation. But volunteer peace officers would not be.

And if section 3362 is indeed understood to reach only volunteer officers and not regularly sworn, salaried officers, then it would operate much like sections 3366 and 3362.5 — also referenced in section 4458.2. They too draw those performing certain law enforcement functions — as a member of a "posse comitatus" (§ 3366), for example, or as a reserve officer in a regularly organized police or sheriff's department (§ 3362.5) — into the workers' compensation

11

scheme. Unlike these categories of peace officers, those employed as regularly sworn, salaried officers may already enter the workers' compensation realm without any specially designed statute. So given the structure of the benefits scheme and the extent to which section 4458.2 depends on section 3362, it makes little sense for section 4458.2 to apply to regularly sworn, salaried peace officers.

This interpretation does not change the fact that all peace officers, including volunteers, are entitled to certain benefits under the workers' compensation law. All peace officers qualify for temporary disability and medical payments, for example.[8] (§§ 4650 et seq., 4600.) Yet regularly sworn, salaried peace officers can receive additional benefits unavailable to volunteers. Under section 4850, peace officers "employed on a regular, full-time basis" who are "disabled" in the line of duty qualify for "a leave of absence while so disabled without loss of salary in lieu of temporary disability payments . . . for the period of disability, but not exceeding one year." (§ 4850, subd. (a).)[9] After this paid leave ends, these officers are still eligible for temporary disability indemnity payments. (§ 4853 [authorizing disability indemnity benefits to peace officers after the end of the leave of absence]; *Boyd v. Santa Ana* (1971) 6 Cal.3d 393, 397 ["Under section 4853, the policeman, after the leave of absence with pay has expired . . . is also permitted to secure benefits under the workmen's compensation law"].)

Through section 4850, then, the Legislature has provided a benefit — paid leave — available to few other employees. And it has determined that this extra

---

[8]    Volunteer peace officers are entitled to these benefits to the extent that the jurisdiction in which they serve has resolved to deem them employees for workers' compensation purposes, pursuant to section 3362.

[9]    This provision also applies to "regular, full-time" investigators in any district attorney's office, probation officers, and firefighters, among others. (§ 4850, subd. (b).)

12

benefit should not deprive regularly sworn officers of their eligibility for disability indemnity should their temporary disability last more than one year. (See § 4853.) Yet by their own terms, these provisions do not apply to volunteers. Given this limitation, section 4458.2 serves a critical balancing purpose in the statutory scheme. It provides maximum disability indemnity and death benefit installment payments to those volunteer peace officers whose service to their departments entails risks of great magnitude. And it bases those maximum indemnity levels on fictitious earnings. (§ 4458.2 ["irrespective of his or her remuneration from this or other employment or from both"].) In short, the Legislature has determined that irrespective of actual pay, volunteer peace officers are entitled to maximum indemnity levels in the event of injury or death suffered while performing their duties.

This court has also recognized the Legislature's decision to afford generous benefits to another group of volunteers who may encounter considerable risks — volunteer firefighters. By providing fictitious earnings-based indemnity levels, section 4458 provides maximum indemnity levels for these firefighters. This arrangement can strengthen incentives for volunteer service, and compensates volunteer firefighters for lost earnings from their full-time employment. (*Meredith v. Workers' Comp. Appeals Board* (1977) 19 Cal.3d 777, 781-782 (*Meredith*).) Section 4458 accomplishes this by substituting a "fictitious earnings component" for "the usual benefit schedules" of section 4453. (*Meredith*, at pp. 781-782.) Doing so counters the potential loss of earnings that citizens face in serving as volunteer firefighters, and it makes it less burdensome for volunteers to support this critical service to the public. (*Id.* at p. 782.)

Section 4458.2 is best understood to serve the same ends. It uses this same fictitious earnings mechanism to assure that covered volunteers will receive maximum indemnity payments. Indeed, for those volunteer peace officers who

13

receive no pay for their police work and no outside remuneration, the fictitious earnings component is critical — without this component, some volunteers might receive no indemnity payments at all. (See §§ 4453, 4653.) Further, section 4458.2 incentivizes volunteers to engage in the often-demanding work of a peace officer. And it recognizes the sacrifice of lost wages that volunteers make in pursuing this important form of public service. In short, section 4458.2's unique role in the workers' compensation scheme appears to match the uniqueness of its intended beneficiaries.

This construction of sections 4458.2 and 3362, in turn, also matches the conclusion of the Board. It is the Board that is most likely to be " 'sensitive to the practical implications of one interpretation over another,' " and we give great weight to the Board's interpretation because of its expert knowledge of complex workers' compensation statutes, and its role as the agency accountable for implementing the statutory scheme. (Cf. *Yamaha*, *supra*, 19 Cal.4th at p. 12.) The Board found "it would be illogical and unnecessary to create a statute [like section 3362] to confer employment on a person who is so obviously an employee [under section 3351] for purposes of workers' compensation." Given, too, section 3362's role in the statutory scheme and its relationship to section 4458.2, the Board determined that the latter provision did not apply to regularly sworn, salaried peace officers like Larkin. And while the Board's interpretation is not long-standing — a factor that we may take into account in considering the agency's construction (*Yamaha*, at pp. 12-13) — neither does the interpretation depart from previous constructions of the relevant provisions. Nothing in the Board's construction is unauthorized in light of the statute's text and structure. (See *Brodie*, *supra*, 40 Cal.4th at p. 1331.) It is, in fact, the interpretation that best advances the Legislature's intended purpose.

14

B.  Legislative History

These textual and structural considerations, along with the agency's reasoning, present a compelling basis for discerning the limits of section 4458.2. To the extent any uncertainty nonetheless persists, we find that the available legislative history associated with sections 3362 and 4458.2 is in accord with our analysis.

The legislative history of section 3362 tends to reflect a concern with the treatment of volunteers.  Though section 3362 ultimately leaves the decision of how to treat volunteers and similarly situated officers to each jurisdiction, the legislator who introduced the measure was concerned about the disparate treatment of volunteer peace officers — who were ineligible for workers' compensation at the time despite their willingness to risk life and limb alongside their salaried counterparts.  (Sen. Stanford C. Shaw, letter to Gov. Edmund G. Brown re Sen. Bill No. 1427 (1959 Reg. Sess.) June 23, 1959 ["This measure was introduced on behalf of . . . districts who find it necessary to use a volunteer non-paid police department for lack of adequate ad valorem tax base to support a paid police department.  This bill simply enables them to provide [workmen's] compensation protection for these policemen, if the local entity desires to provide this benefit.  It is purely optional.  Under the present law, there is no enabling legislation whereby the coverage can be obtained."].)[10]

---

[10]    This statement is from a letter written by the bill's sponsor, and sent before the Governor signed the bill into law.  While there are often limits to what an interpreter may reasonably infer from an individual legislator's letter (e.g., *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 589-590), we have considered letters expressing the views of a bill's sponsor where those views are fully consonant with the statutory language and the history of the legislation.  (*Harrott v. County of Kings* (2001) 25 Cal.4th 1138, 1162, fn. 4 [looking to a letter from a bill's sponsor to the Governor, where that letter accorded with the statutory language and other pieces of legislative history].)  This letter tends to support our

*(footnote continued on next page)*

Also in accord with our reading of the statute, and that of the Board, is the legislative history of section 4458.2. In 1961, the Legislature enacted Assembly Bill No. 2016, codified as section 4458.2. The bill's history bolsters the contention that the Legislature did not intend it to provide maximum indemnity payments to regularly sworn, salaried peace officers. (Legis. Counsel, Rep. on Assem. Bill No. 2016 (1961 Reg. Sess.) ["[A] volunteer policeman, irrespective of remuneration, shall receive workmen's compensation benefits . . . based upon maximum average weekly earnings . . . ."].)

Assembly Bill No. 276 (1989-1990 Reg. Sess.), enacted in 1989, amended section 4458.2. Specifically, it eliminated the words "male" and "volunteer" from section 4458.2. Larkin contends that the elimination of the word "volunteer" reflects the Legislature's intent to extend that provision's benefits to all peace officers, including regularly sworn, salaried officers. But the legislative history of this bill tends to cut against this viewpoint. Indeed, nothing in those materials suggests that the Legislature intended Assembly Bill No. 276 to alter section 4458.2's reach as concerned regularly sworn, salaried officers. (E.g., Sen. Com. on Industrial Relations, analysis of Assem. Bill No. 276 (1989-1990 Reg. Sess.) as amended Apr. 24, 1989, p. 1 [noting the bill was meant "[t]o cover under workers' compensation certain volunteer peace officers when performing the duties of a police officer"].) The Legislature did seek to bestow maximum indemnity levels upon reserve officers. But nowhere did the Legislature indicate that the bill would provide these maximum allowable earnings to regularly sworn, salaried peace

---

*(footnote continued from previous page)*

determination — rooted in considerations of section 3362's text, structure, and operation in the larger workers' compensation scheme — that section 3362 does not apply to regularly sworn, salaried peace officers.

16

officers as well.  (See *id.* at p. 2 [noting that "the compensation for [an injured] reserve peace officer would be calculated on the basis of the maximum allowable earnings, as is currently the case with volunteer police and firefighters"].)

This legislative history notwithstanding, we acknowledge that the 1989 legislative amendment removing the word "volunteer" from section 4458.2 could suggest, when viewed independently, that the Legislature broadened section 4458.2's reach.  Yet this legislative action does not lend support to Larkin's construction of the statute.  First, in the version of section 4458.2 in operation from 1961 to 1989, the word "volunteer" modified "police department," not "police member."  (Former § 4458.2, added by Stats. 1961, ch. 1581, § 1, p. 3408 ["If a male member registered as an active police member of any regularly organized volunteer police department as described in Section 3362 . . . ."].)  Through Assembly Bill No. 276, the Legislature eliminated the reference to "male," substituted "peace officer" for "police member," and deleted the modifier "regularly organized volunteer police."  (§ 4458.2 ["If an active peace officer of any department as described in Section 3362 . . . ."].)  The word "volunteer" never modified "peace officer."  If it had, then Larkin's interpretation might carry greater weight, for the amendment would have been framed in terms of the officer and not the department.  Instead, the word "volunteer" appeared in the middle of the phrase "regularly organized police department."  This phrase, without the word "volunteer," appears verbatim in section 3362, a provision we find inapplicable to regularly sworn, salaried peace officers.  The function of the word "volunteer" in former section 4458.2 suggests that the Legislature removed this term to eliminate redundancy.

Second, the absence of any legislative history explaining the Legislature's decision to eliminate the word "volunteer" is itself significant.  Had the Legislature intended to expand the reach of section 4458.2, we would expect to

17

see an indication of this intent and an explanation of the significance of removing the term "volunteer." (See *Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1169 [attaching significance to "the *absence* of legislative history"]; *Donovan v. Poway Unified School Dist.* (2008) 167 Cal.App.4th 567, 597 ["the *absence* of legislative history [can] be of significance in deciphering legislative intent," citing *Lodge at Torrey Pines*, at p. 1169].) We see no such evidence in the legislative history.

### C. Other Considerations

Larkin argues that the Legislature passed Assembly Bill No. 276 to meet the changing conditions and needs of California. But Larkin neither identifies these changing needs nor explains how extending section 4458.2 to salaried, sworn peace officers would serve them in a manner consistent with the statute's text or purpose. Further, *Meredith*, *supra*, 19 Cal.3d 777, does not bolster Larkin's contention. Indeed, *Meredith* highlighted the rationale for affording maximum indemnity levels to *volunteer* firefighters. (*Id.* at pp. 781-782.) That same rationale does not apply to salaried, sworn officers.

Larkin also contends that the holding we reach today will "deprive[ ] many thousands of officers access to their maximum benefits." Under Larkin's interpretation, though, some police departments would be forced to disregard their officers' actual, bargained-upon weekly wages if any of those officers were injured in the line of duty. Instead, the departments would be compelled to make maximum indemnity payments, rooted in fictitious earnings and untethered from the officers' salaries. For a small police department whose officers' salaries may not be sufficiently high to qualify for section 4453's maximum indemnity levels, this result could impose some financial burden.

18

Larkin emphasizes the principle that the workers' compensation statutes should "be liberally construed" to extend benefits to those "injured in the course of . . . employment."**11** (§ 3202.) What this principle cannot do is to justify an otherwise erroneous construction of section 4458.2. (See *Nickelsberg v. Workers' Comp. Appeals Bd.* (1991) 54 Cal.3d 288, 298 ["[T]he rule of liberal construction stated in section 3202 should not be used to defeat the overall statutory framework and fundamental rules of statutory construction"].) We are mindful of the thrust of section 3202. Yet construing section 4458.2 in the manner suggested by Larkin would defeat the framework of the workers' compensation scheme and subvert the Legislature's intended purpose. As such, we reject the premise that this statutory directive requires us to interpret section 4458.2 as Larkin does.

---

**11** Amicus curiae California Applicants' Attorneys Association (CAAA), writing in support of Larkin, echoes Larkin's argument that the statute should be liberally construed. CAAA advances several other arguments in favor of Larkin's reading, focusing on the distinction between *active* and *reserve* peace officers, changes to the definition of "peace officer" in Government Code section 50920, and the absurdity of excluding regularly sworn, salaried peace officers from section 4458.2's reach. None of these arguments persuades us to adopt Larkin's interpretation.

## III. DISPOSITION

For the foregoing reasons, and consistent with the interpretation of the Board, to which we give great weight, we hold that section 4458.2 does not extend maximum disability indemnity levels to regularly sworn, salaried peace officers. We affirm the judgment of the Court of Appeal.

**CUÉLLAR, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Larkin v. Workers' Compensation Appeals Board
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 223 Cal.App.4th 538
**Rehearing Granted**

_____

**Opinion No.** S216986
**Date Filed:** October 26, 2015
_____

**Court:**
**County:**
**Judge:**

_____

**Counsel:**

Mastagni, Holstedt, Amick, Miller & Johnsen, Mastagni Holstedt, Gabriel R. Ullrich, Brian A. Dixon and Gregory G. Gomez for Petitioner.

Lewis, Marenstein, Wicke, Sherwin & Lee, Robert J. Sherwin and Allison E. Barrett for California Applicants' Attorney Association as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent Workers' Compensation Appeals Board.

Lenahan, Lee, Slater & Pearse, Gerald M. Lenahan and Phoebe M. Vu for Respondent City of Marysville.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Brian A. Dixon
Mastagni Holstedt
1912 "I" Street
Sacramento, CA  95811-3151
(916) 446-4692

Gerald M. Lenahan
Lenahan, Lee, Slater & Pearse
1030 15th Street, Suite 300
Sacramento, CA  95814
(916) 443-1030

2