Filed 1/30/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NICHOLAS CASSON, | |
| Plaintiff and Appellant, | G060950 |
| v. | (Super. Ct. No. 30-2020-01140757) |
| ORANGE COUNTY EMPLOYEES RETIREMENT SYSTEM, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Richard Oberholzer, Judge. (Retired judge of the Kern County Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Reversed with instructions.

Adams, Ferrone & Ferrone and Michael A. McGill for Plaintiff and Appellant.

Reed Smith, Harvey L. Leiderman and Maytak Chin for Defendant and Respondent.

Barbara M. A. Hannah and David H. Lantzer for San Bernardino County Employees' Retirement Association as Amicus Curiae on behalf of Defendant and Respondent.

This appeal arises from a claim for a service-connected disability retirement (i.e., retirement arising from an on-the-job injury) under a pension governed by the County Employees Retirement Law of 1937, Government Code section 31450 et seq. (CERL).[1] Petitioner Nicholas Casson was a firefighter for the City of Santa Ana for 27 years. In 2012, he retired and began collecting a pension from California Public Employees Retirement System (CalPERS). He immediately started a second career with the Orange County Fire Authority (OCFA), where he was eligible for a pension under respondent Orange County Employees Retirement System (OCERS). Importantly, he did not elect reciprocity between the two pensions, which would have allowed him to import his years of service under CalPERS to the OCERS pension. He started as a first-year firefighter for purposes of the OCERS pension and immediately began collecting pension payments from CalPERS. Five years into the job, he suffered an on-the-job injury that permanently disabled him. He applied for and received a disability pension from OCERS, which, normally, would have paid out 50 percent of his salary for the remainder of his life. However, because he was receiving a CalPERS retirement, OCERS imposed a "disability offset" pursuant to section 31838.5, which is the statute at the center of this appeal. This resulted in a monthly benefit reduction from $4,222.81 to $1,123.87.

After exhausting his administrative remedies, Casson filed a petition for a writ of mandate in the trial court. The court denied the petition, finding that the plain language of section 31838.5 required a disability offset. Casson appealed.

We reverse. Section 31838.5 precludes a "disability allowance" that exceeds the amount a member would receive had he or she stayed in a single pension system. We hold that Casson's service retirement from CalPERS is not a disability allowance and thus should not have been included in the calculation of Casson's total

---

[1] All statutory references are to the Government Code unless stated otherwise.

disability allowance. Excluding the CalPERS retirement, Casson's disability allowance—the $4,222.81 OCERS initially agreed to pay him—did not run afoul of section 31838.5. Thus, OCERS should not have imposed an offset, and the trial court should have issued a writ of mandate.

At first blush, this conclusion may seem to contradict our prior holding in *Block v. Orange County Employees' Retirement System* (2008) 161 Cal.App.4th 1297 (*Block*), where we held that a service retirement was a component of a disability allowance. However, the facts in *Block* involved a crucial difference: the plaintiff in *Block* elected reciprocity. In *Block*, we stated, "[S]ection 31838.5, as part of a greater statutory scheme, makes sense only when construed in context as part of that scheme." (*Id.* at p. 1307.) Focusing on the reciprocity system, we concluded a "'disability allowance'" included "all amounts the member receives in *reciprocal* benefits when retiring due to disability . . . ." (*Id.* at p. 1314, italics added.) As we explain in greater detail below, because Casson declined the benefits of reciprocity, he is free from its limitations as well, including the disability offset in section 31838.5.

FACTS

Casson was a firefighter for the City of Santa Ana for 27 years. He took a service retirement in 2012 and immediately began receiving pension payments through CalPERS of approximately $7,200 per month. At the same time, Casson went to work for OCFA as a new hire firefighter. The OCFA utilizes OCERS for its pension system.

Upon being hired by OCFA, Casson did not elect reciprocity between his prior pension, CalPERS, and his new pension, OCERS. Consequently, OCERS sent Casson a letter in August 2012, informing him that, as a result of his choice, "your retirement deductions will be based on your age of entry into the OCERS and you will be required to meet the minimum eligibility requirements for your retirement, disability and survivor benefits based solely on your employment with OCFA."

3

While working for OCFA, Casson suffered an industrial injury that prevented him from performing the essential job functions of a firefighter. As a result, he applied to OCERS for a service-connected disability retirement. That application was approved by OCERS in June 2017. Casson was granted a disability retirement in the amount of $4,222.81 per month.

In August 2017, OCERS informed Casson that it would apply a disability offset pursuant to section 31828.5 as a result of his CalPERS pension payments. After the offset, his monthly payment from OCERS would be $1,123.87.

Casson appealed OCERS' decision before the OCERS Board of Retirement, which affirmed the decision to impose the disability offset.

Casson then filed a petition for writ of mandate in the superior court seeking to have the disability offset set aside. The court denied the petition. The court reasoned: "'The exclusion of the word reciprocity from this section when the Legislature was aware of it, shows that the Legislature did not intend to include it when it adopted [section] 31838.5.'" Casson appealed.

## DISCUSSION

The parties have presented us with a single issue on appeal: Does the term "disability allowance" in section 31838.5 include payments under a prior service pension in the absence of reciprocity? This is a pure statutory interpretation issue. "We review questions of statutory interpretation de novo." (*Christensen v. Lightbourne* (2019) 7 Cal.5th 761, 771.)

Before addressing the statute and the parties' arguments, we begin with background: what is reciprocity? Consider this hypothetical: a person works for a county agency and has earned 10 years of service credit toward a pension. The person is then offered a more attractive job with the state, which, unfortunately, operates under a different pension system. That person is now faced with a dilemma: either halt all

4

progress on the first pension and start a new pension at an older age, or give up on the more attractive job. The Legislature wisely recognized that this dilemma would inhibit the free flow of labor between government jobs, and it implemented reciprocity to address the dilemma.

Here is how reciprocity works: at the time of retiring from a qualifying job, the employee may elect to defer pension benefits and leave his or her contributions on deposit with the pension plan. (§ 31700.) If, within the applicable timeframes, the employee is employed in another government position with a qualifying pension plan, the employee may elect to link the two pensions in a system of reciprocity. (§ 31831.) The effect of that election is the employee does not receive pension benefits under the first plan until he or he or she retires from the second plan. The advantage to the employee is that he or she enters the second pension plan with the same amount of service credit as the first plan (§ 31836), is deemed to have entered the second plan at the age he or she entered the first plan (entering a plan at a younger age generally results in lower monthly contributions) (§ 31833), and his or her final salary for purposes of computing pension benefits is the highest salary earned in either job (§ 31835). "Reciprocity . . . eliminates the adverse consequences a member might otherwise suffer when moving from one retirement system to another." (*Block, supra,* 161 Cal.App.4th at p. 1308.) Essentially, the employee gets to treat the second pension plan as a continuation of the first pension.

Importantly, reciprocity is not automatic. An employee must affirmatively elect reciprocity. (§ 31831.) Once that election is made, the employee may not withdraw funds from the first pension while a member of the second pension. (*Ibid.*)

With that understanding of reciprocity, we turn now to section 31838.5, which places certain limits on the amount of disability pay a person may receive if he or she has been the beneficiary of multiple CERL retirement plans. "In interpreting a statute, we begin with its text, as statutory language typically is the best and most reliable

5

indicator of the Legislature's intended purpose." (*Larkin v. Workers' Comp. Appeals Bd.* (2015) 62 Cal.4th 152, 157.) The text of section 31838.5, in relevant part, is as follows: "No provision of this chapter shall be construed to authorize any member, credited with service in more than one entity and who is eligible for a disability allowance, whether service connected or nonservice connected[,] to receive an amount from one county that, when combined with any amount from other counties or the Public Employees' Retirement System, results in a *disability allowance* greater than the amount the member would have received had all the member's service been with only one entity." (Italics added.)

OCERS' argument, which the trial court adopted, is relatively straightforward: section 31838.5, on its face, does not limit its application to reciprocal pensions. Indeed, the word reciprocal is nowhere mentioned in the statute. To the contrary, the statute begins, "No provision of this *chapter . . . .*" (§ 31838.5, italics added.) That chapter (Chapter 3 of title 3, division 4, part 3 of the Government Code) encompasses the entirety of the County Employees Retirement Law of 1937. OCERS thus concludes that section 31838.5 applies to all pensions under that law, not merely reciprocal pensions. Moreover, OCERS notes that in *Block, supra,* 161 Cal.App.4th 1297, where the plaintiff retired from two separate pensions, we held that both a service component and a disability component should be combined to determine the amount of the "disability allowance" under section 31838.5. OCERS concludes that here, too, Casson's service pension combined with his disability pension would exceed the limit imposed by section 31838.5.

Casson takes the view that section 31838.5 only applies to reciprocal pensions. He notes that section 31838.5 is part of Article 15, which is entitled "Reciprocal Benefits." He further notes that in *Block*, where we extensively analyzed section 31838.5, we reasoned that section 31838.5 "makes sense only when construed in

6

[the] context" of the reciprocity scheme. (*Block, supra,* 161 Cal.App.4th at p. 1307.) We also drew extensively from the legislative history that revealed section 31838.5 was implemented to address a flaw in the reciprocity system. He argues that having forgone the benefits of reciprocity, he should not suffer its limitations either.

As is apparent from the parties' arguments, this court's prior opinion in *Block* is central to this appeal. The facts in *Block* are uncannily similar to our facts. There, Block, a firefighter, retired after approximately 27 years, entitling him to a pension under CalPERS. (*Block, supra,* 161 Cal.App.4th at p. 1303.) He then immediately went to work for OCFA, becoming a member of a pension administered by OCERS. (*Ibid.*) Importantly, he elected reciprocity and thus deferred his CalPERS retirement. (*Ibid.*) After about seven years, Block was injured on the job and applied for a service-connected disability pension, which was approved by OCERS. (*Ibid.*) He concurrently retired from CalPERS. However, because his benefit under CalPERS combined with his disability payment from OCERS would exceed his salary, OCERS applied a disability offset, which Block challenged on appeal. (*Id.* at pp. 1303-1304.)

The central focus of *Block* was to define the term "disability allowance," which is a crucial term in section 31838.5. That section, after all, prohibits a "disability allowance" that exceeds what the pensioner would have received under a single pension system. Block's contention was that his pension had two components: a service pension from CalPERS, and a disability allowance from OCERS, only the latter of which was relevant to section 31838.5. We ultimately disagreed with that contention: "Analysis of section 31838.5's language in light of the CERL reciprocity provisions, related CERL provisions, and section 31838.5's legislative history leads us to conclude the term 'disability allowance' in section 31838.5 refers to all amounts the member receives in *reciprocal benefits* when retiring due to disability, regardless whether those amounts are

7

labeled 'disability retirement' or 'service retirement.'" (*Block, supra,* 161 Cal.App.4th at p. 1314, italics added.)

We observed that the Legislature amended section 31838.5 in 1984 to apply to service-connected disability retirements (initially it only applied to nonservice-connected disability retirements). In making that amendment, the legislature necessarily, albeit implicitly, referenced section 31727.4. This is because section 31727.4 is the section that prescribes the amount of a service-connected disability retirement. Thus, in the context of a service-connected disability retirement, the term "disability allowance" could only refer to the benefit calculated under section 31727.4. The amount section 31727.4 prescribes is the higher of: (1) what the employee would have received as a service retirement; or (2) 50 percent of the employee's salary. So while Block, who had 27 years of service as a member of CalPERS, was receiving what he would have received as a service retirement from CalPERS, that payment was in fact a disability payment pursuant to section 31727.4. It was, therefore, part of his "'disability allowance.'" (*Block, supra,* 161 Cal.App.4th at pp. 1315-1316.)

We also reasoned that our conclusion was consistent with the logic of the reciprocity system. The notion of reciprocity is that the employee is permitted to treat the two retirement systems as though they are one. That brings certain benefits, but it also means the disability payout will be consistent with having a single pension, not two pensions. "What we can glean from the legislative history is an expression of the Legislature's intent that a member retiring due to service-connected or nonservice-connected disability shall not receive in reciprocal benefits—however labeled—an amount greater than what the member would receive if all of the member's service had been with one entity." (*Block, supra,* 161 Cal.App.4th at p. 1318.)

Casson's situation is entirely different. Casson did not elect reciprocity. He chose to treat the two pensions as separate. He forwent valuable benefits to do so.

8

The compelling logic of treating the two pensions as one for disability purposes, therefore, simply does not apply. On the contrary, it would be fundamentally unfair to Casson to limit his disability allowance to the equivalent of a single pension when he did not elect the benefits of treating the two pensions as one.

From a textual standpoint, moreover, there is no reason to treat Casson's CalPERS service retirement as a "disability allowance." In *Block*, we did so by deeming the CalPERS payment as being a service disability payment pursuant to section 31727.4. Here, however, Casson began receiving service retirement payments from CalPERS several years before he suffered his disability. In no sense, therefore, is his CalPERS payment made pursuant to section 31727.4. It is a straight service retirement payment, not a disability payment. As a result, his payment from CalPERS cannot be considered part of his "disability allowance" under section 31838.5.

In reaching this conclusion, we have not necessarily resolved the overarching debate the parties have over whether section 31838.5 could *ever* apply to non-reciprocal pensions. Arguably, a pensioner receiving a *disability retirement* from a first pension and then receiving a *disability retirement* from a second, non-reciprocal pension would be subject to an offset. As OCERS has pointed out, the statute is not, on its face, limited to reciprocal pensions. However, we need not decide that case today, as it is not before us. Our holding is limited to this: when a pensioner receives a service retirement under a CERL pension and becomes a member of a second CERL pension but does not elect reciprocity, his or her first *service* pension cannot be considered part of a "disability allowance" under section 31838.5.[2]

---

[2] Amicus San Bernardino County Employees' Retirement Association has argued that a reversal could lead to the following "absurd" result: "An employee could conceivably service retire from one system, go to work for a second system and receive a disability retirement, then go to work for a third system in a different position. If the employee received a disability retirement from the third system, the total combined retirement benefits could reach 200 [percent] of the employee's final compensation."

9

DISPOSITION

The judgment is reversed.  The court is instructed to grant the petition for writ of mandate ordering OCERS to vacate the disability offset and recalculate petitioner's pension benefits.  Appellant is to recover costs incurred on appeal.

O'LEARY, P. J.

WE CONCUR:

BEDSWORTH, J.

DELANEY, J.

---

Under our holding, assuming the employee did not elect reciprocity for any of the pensions, the service portion of the retirement could not be considered a disability allowance.  However, whether the second and third disability retirements would combine into a disability allowance that exceeds the limits of section 31838.5 is the question we have not answered.

10